**ARTHUR IMERMAN UNDERGARMENT CORPORATION** and **Matawan Undergarment Co., Inc.,** Plaintiffs,

v.

**LOCAL 162, INTERNATIONAL LADIES' GARMENT WORKERS' UNION, A.F. OF L.-C.I.O.;** Local 166, International Ladies' Garment Workers' Union, A.F. of L.-C.I.O., and International Ladies' Garment Workers' Union, A.F. of L.-C.I.O., Defendants.

Civ. A. No. 699–56.

United States District Court
D. New Jersey.

Oct. 11, 1956.

Carpenter, Bennett, Beggans & Morrissey, by Thomas L. Morrissey, Jersey City, N. J., Irwin Feldman, New York City, for plaintiffs.

Kapelsohn, Lerner, Leuchter & Reitman, by Sidney Reitman, Newark, N. J., Morris P. Glushien, New York City, for defendants.

HARTSHORNE, District Judge.

This motion to confirm an arbitration award raises the threshold question as to the power of this particular Court to confirm this award, and thereafter, if such power exists, questions as to the extent of the confirmation, both as to the parties against whom the confirmation is to be entered as a judgment, and the nature of that judgment.

The two plaintiff New Jersey corporations, together with a third South Carolina corporation, called Spartan Undies, Inc., are all under the same control and identic stock ownership, and will hereafter be designated as Imerman. The two defendant Locals affiliated with the International Ladies' Garment Workers Union, A.F.L.–C.I.O., hereafter designated as the Locals, are the recognized bargaining representatives of the employees of the above New Jersey Imermans. The International Ladies' Garment Workers Union, A.F.L.–C.I.O., hereafter designated as the International, is engaged in a dispute with South Carolina Imerman, now pending before the National Labor Relations Board, but has so far failed in its attempt to become the recognized bargaining representative of the employees of the South Carolina corporation.

On April 29, 1955 the two New Jersey Imermans and the two Locals entered into a written collective bargaining agreement which, among other things, dealt with the Imermans' "right to give out work to any contractors the employers may choose * * *" (paragraph 16) and the New Jersey Imermans did give out such work to South Carolina Imerman. However, such agreement further provided that the New Jersey Imermans should not give out such work "in the event there shall be a bona fide labor dispute between the union and any such contractors and as a result thereof the union shall have declared said contractor on strike" (paragraph 16). Since it was contended that this situation existed, a dispute arose between the New Jersey Imermans and the two Locals, involving the International also, with the establishment of a picket line and the refusal of employees of the New Jersey Imermans, members of the Locals, to cross this picket line, as well as the alleged involvement of truckers, members of other unions.

This collective bargaining agreement provided, in paragraph 23, that "any and all disputes, complaints, controversies, claims or grievances whatsoever between the Union or any employees and the employer * * * shall be adjusted * * *" by having the matter "submitted to arbitration before * * * the American Arbitration Association * * *." This arbitrator was given power to grant relief "commanding or restraining acts and conduct of the parties", his award to be "enforceable by appropriate proceedings in law or in equity." There further followed provisions that arbitration was to be the "exclusive means for the determination of all disputes" and that this provision was to be "interpreted as broadly and inclusively as possible". Accordingly, the New Jersey Imermans, the Locals, and perchance the International, though this last is a disputed fact, applied separately to the American Arbitration Association for arbitration.

The above constitute the salient features of the facts as submitted to, and found by, this Court.

Faced with a slight delay in the arbitration, and because of the claimed interference with their work, resulting to the Imermans in both New Jersey and South Carolina, the New Jersey Imermans filed a complaint in this Court against both the Locals and the International, asking for injunctive relief, both temporary and final, as well as damages, and also asking for arbitration under the above collective bargaining agreement. The violation of this agreement was there alleged as being the basis of the jurisdiction of this Court under Section 301 of the Labor Management Relations Act, 1947, as amended, 61 Stat. 156, 29 U.S.C.A. § 185. Thereunder the New Jersey Imermans moved for a temporary injunction. The Lo-

cals countered with an application for a stay of the injunction under Section 3 of the Federal Arbitration Act, 1947, 61 Stat. 669, 9 U.S.C.A. § 3. The application by the Unions was first heard, since it sought to stay any further proceedings in this Court, the sole issues thereon being whether the Unions were "in default in proceeding with such arbitration", in which event the Act provided no such stay should issue, and whether the dispute involved was arbitrable under the contract. At such hearing this Court found there was no such default and that the issues involved were arbitrable.

In view of the fact that complete diversity of the parties was lacking, and that as the complaint alleged, the sole basis of jurisdiction of this Court was for violation of the collective bargaining agreement, and in view of the further fact that the International was admittedly not an express party to such agreement, this Court, on application, dismissed the above complaint as to the International. It should perhaps be added that at this time the claim was not stressed, as it was later, that the International was itself responsible for the dispute under the agreement, on the theory that it was acting in that regard as an agent of the Locals, and therefore this Court could take jurisdiction over the International under 29 U.S.C.A. § 185(b) and (e).

Almost immediately after the above hearing the arbitration proceeded, and the arbitrator promptly rendered his "interim award" granting the New Jersey Imermans their application for "interim injunctive relief", this relief enjoining both the International and the Locals from "picketing" the plants of the New Jersey Imermans, and directing the Locals to "instruct its members who are employees at those plants to return to work forthwith". Shortly after the rendition of this award, the New Jersey Imermans applied to this Court to confirm this award—the instant motion.

On this motion the same attorney noted his appearance specially for the In-ternational and generally for the Locals, in objection to this motion, these objections being based on several grounds: (1) that this Court had no jurisdiction under the express provisions of Section 9 of the Federal Arbitration Act, (2) that this Court under the Norris La-Guardia Act, 29 U.S.C.A. § 101 et seq., cannot confirm an injunctive order against a labor union affecting a strike. In addition, it was objected, as to the International, that (3) the International not being a party to the collective agreement calling for arbitration, could not be subjected to the arbitration award, (4) that this Court, having dismissed the above complaint as to the International, could not adjudicate against the International under such complaint. As to the Local, the additional objection was made (5) that since they had already complied with the injunctive relief awarded as above, the matter was moot.

Replying to these objections the New Jersey Imermans argued (1) that the unions, by asking in this Court for the above stay under Section 3 of the Federal Arbitration Act, had waived any objection to the power of this Court under Section 9 of the Federal Arbitration Act, (2) that the Union's construction of the Federal Arbitration Act would render the Imermans' remedy futile, (3) that the International had by other acts submitted itself to arbitration—clearly a fact issue, (4) that the Locals and International were combining to violate the above collective agreement and thus were agents for each other, so that both were subject to this Court's power.

Irrespective of the fact and law issue as to whether the International, as distinguished from the Locals, had made itself a party to the arbitration, so that it could be bound to obey an injunctive award therein, it seems clear that both sides have been proceeding under the Federal Arbitration Act. Certainly the Unions have. They have expressly availed themselves of Section 3 of such Act, under which they obtained the action of this Court, staying its proceedings on

the instant complaint until the arbitration had been had. Not only so, but the New Jersey Imermans as plaintiffs, themselves sought to take advantage of the provisions of Section 3 of the Federal Arbitration Act, by contending for almost an entire day before this Court that the Unions were in default in proceeding with the arbitration, a default which would have forfeited the Unions' right to such stay. Again, the present motion by plaintiffs is one asking this Court "for an order confirming the award," the exact procedure provided in Section 9 of the Federal Arbitration Act.

■■ Having sought to take advantage of a remedy furnished by the Congress, no party can be heard to object to the conditions which Congress has affixed to such remedy. United States ex rel. Texas Portland Cement Co. v. McCord, 1914, 233 U.S. 157, 163, 34 S.Ct. 550, 58 L.Ed. 893; Montana Power Co. v. United States, D.C.N.J.1954, 121 F. Supp. 577, affirmed, 3 Cir., 1956, 232 F. 2d 541; 1 A.J., Actions, Sec. 11, page 410. Further, not only have the parties here adopted the Federal Arbitration Act as their mode of procedure, so that it would be quite anomalous to permit one of them, while this procedure was still going on, to drop it and adopt the differing procedure of a State Arbitration Act, leaving the other side hanging in the air, but, according to the recent decision of Local 205 U. E., etc. v. General Electric, 1 Cir., 1956, 233 F.2d 85, there are added reasons why the parties can do no such thing. The Imermans' complaint in this Court was based on the violation of a collective bargaining contract under above Section 301. This Court obtains jurisdiction of such proceeding not because of diversity, as in Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 76 S.Ct. 273, but because Section 301 bases the matter on a Federal question. This Court proceeds as to this Federal question, not under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to apply State law, but to apply Federal law to this Federal question. The only Federal arbitration law applicable is the Federal Arbitration Act, to which the parties here are thus confined.

■ Turning to the Federal Arbitration Act under which the parties are thus proceeding, in the very section providing for "an order confirming the award," we find the provision that if, as here, "no court is specified in the agreement of the parties," as the one which should grant an order confirming the award, then "such application may be made to the United States court in and for the district within which such award was made." The record shows that the award was made in fact in New York City, i. e., within the jurisdiction of the United States District Court for the Southern District of New York, not within the jurisdiction of this Court.

Since the Congress has conditioned the confirmation of an award upon an application, under the present circumstances, solely to the Southern District of New York, it is clear that this Court is without power to act under the circumstances, at least if plaintiffs are simply making a motion to confirm the award —the very way their moving papers read.

Plaintiffs claim, however, that this Court should disregard their papers, and consider their application, not as a mere motion to confirm an award—a summary method, authorized by Congressional action, to turn an arbitration award into a judgment—but should consider the present proceedings as if they were an application to enter judgment after verdict in the plenary action originally brought, and now stayed under the Federal Arbitration Act. However, not only is this assumption contrary to plaintiffs' own words, but the authority they cite therefor is inapplicable. In support, they rely upon the following words in Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 1944, 146 F.2d 381, 383:

"It would be a lame and impotent conclusion in that event to require the successful plaintiff to begin a new action on the award. Arbitration is merely a form of trial, to be

adopted in the action itself, in place of the trial at common law: it is like a reference to a master, or an 'advisory trial' under Federal Rules of Civil Procedure [28 U.S.C.A.] * * *. That is the whole effect of § 3."

But these very quoted words were later stated by the United States Supreme Court not to be the law. In Bernhardt v. Polygraphic Co., supra, 350 U.S. at page 203, 76 S.Ct. at page 276, the Supreme Court said:

"The Court of Appeals, in disagreeing with the District Court as to the effect of an arbitration agreement under Erie Railroad Co. v. Tompkins, followed its earlier decision of Murray Oil Products Co. v. Mitsui & Co. * * * which held that, 'arbitration is merely a form of trial, to be adopted in the action itself, in place of the trial at common law: it is like a reference to a master, or an "advisory trial" under Federal Rules of Civil Procedure * * *.'

"We disagree with that conclusion."

In the next place, Mitsui did not involve the crucial question here involved, as to the necessity for a party using a Congressional remedy to comply with the conditions which the Congress affixed to such remedy. For in Mitsui, instead of the confirmation of the award being sought in a district other than that "within which such award was made", the award there was sought in the very district where "such award was made." So the Court in Mitsui did not have before it the crucial difficulty with which the Imermans are here faced.

Nor does this Congressional condition render plaintiffs' relief so futile that such condition cannot be assumed to be the intent of the Congress. For in Section 9 the Congress has expressly provided that "If the adverse party shall be a non-resident" of the district where the application for the order confirming the award is sought "then the notice of the application shall be served by the Marshal of any district within which the adverse party may be found * * *." Indeed, if, contrary to the above, this Court were to regard the present action before it as a plenary one, so as to proceed thereunder to confirm the award, such a remedy itself might well be futile, since the International is no longer a party to such action. As to the claim of waiver by the Unions of the objection to this Court's lack of power, even treating same as a matter of venue, and thus waivable, the Unions did only what they were compelled to do by Section 3 of the Federal Arbitration Act. They could not obtain their stay elsewhere. Hence there was no "voluntary relinquishment of a known right"—the essence of waiver.

Since the decision of this threshold question thus renders immaterial the decision of the many other issues presented by the parties, same will not be discussed.

Plaintiffs' motion for an order confirming the award is denied. An order may be entered accordingly.