**ALLENDALE NURSING HOME, INC.,
Plaintiff,**

v.

**LOCAL 1115 JOINT BOARD and Herbert
A. LeGrange, Defendants.**

**Nos. 73 Civ. 4794 HRT, 73 Civ. 4796 HRT.**

United States District Court,
S. D. New York.

June 13, 1974.

Joseph P. Napoli, New York City, for plaintiff.

Katz & Wolchok, New York City, by Milton M. Konowe, New York City, of counsel, for defendants.

## OPINION

TYLER, District Judge.

On November 1, 1973, plaintiff, a corporation organized by New Jersey law and having its principal place of business in New Jersey, commenced this action in Supreme Court of the State of New York, New York County, seeking to set aside an arbitrator's award entered on October 17, 1973. On November 8, 1973, the defendant ("the union") removed the action to this court. At about the same time, the union filed an answer in which it asserted a counterclaim requesting this court to enter an order pursuant to 9 U.S.C. § 9 confirming the award of arbitrator Herbert A. LeGrange, dated October 17, 1973, and entering judgment thereon. That arbitration award, based on an opinion of arbitrator LeGrange, assessed damages in the amount of $100,000 in favor of the union against plaintiff.

On November 30, 1973, this court heard plaintiff in support of its motion for a preliminary injunction staying the arbitration award and the union's counter motion for summary judgment confirming the award. Despite the reluctance of counsel to agree, this court on that day directed that an evidentiary hearing be held on all issues, primarily because then, as throughout these proceedings, there have been sharp issues of fact between the parties and their counsel about most important issues and a good many peripheral issues as well. Both sides continued to agree on adjournments, mainly on claims that their counsel were occupied in other litigated matters. Finally, counsel and the parties agreed to the suggestion of this court that the matter come on for a plenary trial on April 4, 1974. Although both sides rested at the conclusion of trial that day, the court then suggested that the hearing could be reopened upon a request of either side to submit addi-

tional witnesses. Counsel took advantage of the court's offer, and the trial was reopened for further testimony on April 29, 1974. Post-trial briefs have been submitted, and the matter is ripe for resolution.

The union is an unincorporated labor organization with its principal place of business in the Borough of Manhattan, City and State of New York. The union represents employees in industries affecting commerce. At all times relevant, subject to a dispute to be discussed hereinafter, the union apparently represented employees of the plaintiff in New Jersey. As stated, plaintiff, a New Jersey corporation, apparently is in the business of operating nursing homes in New Jersey and elsewhere. Jurisdiction is said to obtain in this court pursuant to the provisions of 29 U.S.C. § 185 and 9 U.S.C. § 9.

Concededly, on May 24, 1968, plaintiff and the union entered into a collective bargaining agreement. That document included a broad and detailed arbitration clause, many provisions of which are either at issue or pertinent in the present controversy. That arbitration clause, Article 9 of the agreement, states in significant part as follows:

"All complaints, disputes or grievances whatsoever of whatever kind or nature arising between the Union and the employer concerning any provision of the contract, or with respect to any other act, conduct or relation between the parties, directly or indirectly, shall be submitted for arbitration to. . . . The arbitration shall be brought on by a written notice sent by the party requesting the same addressed to the other party at the address set forth in this agreement. Said notice shall not be required to set forth the issues but should state that a grievance or dispute exists between the parties. It is expressly agreed between the parties hereto that should any dispute or grievance arise after the sending of the said notice, all such additional disputes or grievances shall likewise be arbitrated at the time of

the arbitration hearing. . . If either party fails or refuses or neglects to appear, then the arbitrator shall hear the evidence of the party appearing and render his decision as if both parties had appeared. The decision of the arbitrator shall be binding upon the parties and the employees and shall have the effect of a judgment entered upon an award as provided by the Civil Practice Law and Rules of the State of New York . . . The arbitrator is empowered to include in his award mandatory and injunctive relief and to assess damages."

On or about March 12, 1973, the union invoked the arbitration procedures under Article 9 of the contract, and the issues raised initially by the union were submitted to arbitrator Herbert A. Le-Grange, who was named as a defendant in this action but, since filing a petition for removal to this court, has made no further appearance in these proceedings. The union's letter or notice to arbitrate of March 12, 1973 is not in the record before this court. As stated by plaintiff, however, the issues raised in that notice included:

"(a) Disability payments to the State of New Jersey (employee contributions).

(b) The furnishing by the plaintiff employer of a list of employees and their benefits.

(c) The alleged failure of the plaintiff employer to remit the dues and initiation fee of one employee to the defendant union.

(d) The alleged refusal of plaintiff employer to require employees to become union members after thirty (30) days employment.

(e) The alleged commingling by the plaintiff of union dues and initiation fees with other funds of the plaintiff employer.

(f) The alleged refusal of the plaintiff employer to allow union shop stewards to handle union problems during company time.

(g) A charge that part-time employees have not received minimum wages or increases as specified in the contract."

Thereafter, it seems that the arbitrator set down several hearing dates only to have one or the other of the parties seek successfully an adjournment. On June 12, 1973, the union, prior to any significant hearings before the arbitrator, sent a letter to the company and the arbitrator setting forth "additional disputes or grievances" and requested that these be arbitrated with the matters set forth in the union's petition of March 12th. In this letter, the Local asked for damages of $175,000.00 because of the violations mentioned in the March 12 notice. In addition, the union asked to have the dismissal of employee Joseph Crowley arbitrated. Thus, the arbitrator set down these additional disputes or grievances for hearing on June 25, 1973, the same day on which he had adjourned the earlier issues for hearing.

### The Events of March 23, 1973

In the course of the trial or hearings before this court, parties and their counsel devoted most of their attention to the events of the day of March 23, 1973. This is because of the plaintiff's contention that in accordance with the provisions of the collective bargaining agreement of 1968, plaintiff on that day submitted a letter to the union terminating that agreement by its terms. Plaintiff produced a great number of witnesses who testified, most unconvincingly, to the effect that about noon on that day in the offices of plaintiff, Mrs. Geraldine Sanderson, the administrative assistant for plaintiff, delivered to union agent Aldrich a termination letter signed by plaintiff's president. See Plaintiff's Exhibit 1. This court finds that no such letter was delivered to the union terminating the contract on that day or any other day. On the whole, the court finds the witnesses for the union on this issue to be more credible than those submitted by plaintiff. Moreover, the court is aided in

this finding by the preliminary finding that at no time before the arbitrator did any representative of plaintiff ever mention or make an argument based upon the alleged termination letter of March 23, 1973.

From these findings, it follows that the claims of the company before this court, to the effect that the arbitration issues submitted by the union in its letter of June 12th were foreclosed by the termination, is not correct. Parenthetically, however, it is noted that even without these findings, the language of Article 9 leads this court to conclude that such issues, with one possible exception,[1] although raised after March 12, nevertheless were issues which arose prior to any alleged termination and thus were clearly arbitrable before Mr. LeGrange. See, United Steelworkers v. Enterprise Wheel and Car Corp., 363 U. S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Holly Sugar Corp. v. Distillery Workers Union, 412 F.2d 899, 903–904 (9th Cir. 1969).[2]

### The Events of June 25, 1973

In connection with the arbitration proceedings before Mr. LeGrange, the company was represented by a non-lawyer, one Carl L. Ellman, a labor management relations specialist and consultant. In the view of the court, Ellman's trial testimony was less than impressive, and in some instances, incredible. As an illustration of the latter, it is to be observed that Ellman testified that at the hearing on June 25th he showed Mr. LeGrange and Mr. Konowe, the attorney for the union, the alleged termination letter of March 23, 1973. As heretofore found, no such letter was submitted to the union, and I further find that this testimony of Ellman is not true.

The main happening on June 25th occurred early when the parties arrived at the arbitrator's rooms here in New York

City. With Mr. Ellman was, among others, Mrs. Geraldine Sanderson, who shortly after her arrival became noticeably ill. Mrs. Sanderson's condition caused concern to a number of persons present, including the arbitrator who asked early on if an ambulance should not be called for her. Mrs. Sanderson refused this suggestion, but nevertheless went almost at once to the Beekman Downtown Hospital in the company of Mrs. Giancarlo, the wife of the president of plaintiff and the administrator of plaintiff.

What happened next is not, strangely enough, in significant dispute. Shortly after Mrs. Sanderson left for the hospital, the arbitrator for some reason took it upon himself to telephone Beekman Downtown Hospital and ascertain that Mrs. Sanderson was in fact there. He learned that at that moment Mrs. Sanderson was in the emergency room of the hospital. LeGrange then joined the parties and their representatives and announced that he would proceed to hear the union's witnesses. The arbitrator's stand disturbed Ellman, who argued for an adjournment on the ground that he needed Mrs. Sanderson present in order to advise him so that he could properly cross-examine the union witnesses. The arbitrator apparently suggested at this point to Ellman that once the union witnesses were heard, he, the arbitrator, would consider Ellman's application for an adjournment. I do not credit Ellman's denial that the arbitrator ever said such a thing. In any event, Ellman immediately left, as did apparently other company representatives who were present. The arbitrator then proceeded to hear union witnesses without any company representatives or witnesses being present.

Some three days later, on June 28, 1973, Ellman submitted *ex parte* to LeGrange a letter requesting permission to submit further evidence. So far as can

---

1. This exception concerns the dismissal of Joseph Crowley which occurred on June 6.

2. Plaintiff's argument that the election of May 30, 1973 deprived the arbitrator of his power must also fail. As stated by Mr. Na-

poli in his affidavit of October 30, 1973, the ballot box in that election was sealed until at least November 2, 1973. Thus, on June 25, the union still represented the employees. Decertification did not occur until November 27, 1973.

be determined, the arbitrator never responded to this letter. Finally, on October 17, 1973, arbitrator LeGrange entered his opinion and award in favor of the union in the sum of $100,000.

*Questions Concerning the Scope of Jurisdiction of This Court*

Although the parties and their counsel have not concerned themselves with this, the court must preliminarily concern itself with questions concerning the scope of its jurisdiction. Given the diversity of citizenship of the parties plus their apparent concession that each is an organization dealing with activities in commerce, it would appear that this court has at least general jurisdiction under the Federal Arbitration Act and under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. But recent decisions in this circuit point up the importance of making sure that the district court has power or jurisdiction specifically in respect to matters and purposes for which it is called upon to act. See In re I/S Stavborg, etc. v. National Metal Converters, Inc., 500 F.2d 424 (2d Cir. 1974) ("Stavborg").

 Under accepted law, a suit may be maintained under § 301 by a party to a collective bargaining agreement to enforce the award of an arbitration. General Drivers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 n. 1, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Although these cases do not refer to the Arbitration Act, 9 U.S.C. § 1 et seq., it would seem that to "round out its power to afford relief in agreements to arbitrate, it is obvious that the court also possesses the power to vacate or modify an arbitration award under Section 301." White Motor Corp. v. International Union, U.A., A. & A.I.W., No. 932, 365

F.Supp. 314, 316–317 (S.D.N.Y.1973). Cf. White Motor Corporation v. International Union U.A.W., 491 F.2d 189 (2d Cir. 1974). Furthermore, unlike *Stavborg*, this suit may be removed to a federal court even if the parties intended the judgment of the arbitrator to be entered in a state rather than a federal court. Local 174 Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). 28 U.S.C. § 1441. Moreover, the law to be applied in this case is federal law, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S. Ct. 912, 1 L.Ed.2d 972 (1957), and since there is a specific statute governing arbitration, it should be applied here.[3]

*The Adjournment Issue*

The first of plaintiff's two contentions before this court is that arbitrator LeGrange committed plain legal error when he refused to give plaintiff an adjournment on June 25, 1973, aware as he clearly was of the bona fide and serious illness of Mrs. Sanderson. As plaintiff points out, the plain language of the Federal Arbitration Act, 9 U.S.C. § 10(c), provides that failure to permit one or the other of the parties an adjournment under circumstances calling for such is enough to vitiate an arbitrator's award. It is also true, as the union argues, that a court such as this one has to examine the facts and circumstances surrounding the arbitrator's refusal to grant an adjournment. Unfortunately, neither the parties nor this court have been able to find any authorities closely in point to the facts which have been found to pertain on June 25th. *See generally*, Tube & Steel Corporation of America v. Chicago Carbon Steel Products, 319 F.Supp. 1302 (S.D. N.Y.1970).

 Nonetheless, and despite the peculiar and ill-advised conduct of Ellman who chose to leave the hearing room

3. The exception to the coverage of the Arbitration Act in 9 U.S.C. § 1 for "workers engaged in foreign or interstate commerce" does not apply here, there being no evidence that plaintiff's employees are engaged in the transportation industries. Erving v. Virginia Squires Basketball Club, 468 F.2d 1064, 1069 (2d Cir. 1972); Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150, 351 F.2d 576 (7th Cir. 1965); Signal Stat. Corp. v. Local 475, United Electrical Workers, 235 F.2d 298 (2d Cir. 1956), cert. denied 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957).

when arbitrator LeGrange insisted that the union's case at least go forward, I am inclined to think that the plaintiff has the better of the arguments—and this notwithstanding the incredible testimony of many of its witnesses and the occasional distressing misrepresentations of fact and law submitted by its counsel before this court. Although it is true that *Ellman* is not a lawyer, he certainly was entitled to cross-examine the union witnesses who were produced on June 25th. I also infer from the evidence that Mrs. Sanderson was a crucial, if not the most crucial, representative of the plaintiff in connection with the various grievances which were being arbitrated. It is true that her immediate superior, Mrs. Giancarlo, was present on June 25th. On the other hand, there does not seem to be much doubt but that Mrs. Sanderson knew more about the matters at hand than did Mrs. Giancarlo.

It is also true, as apparently concerned arbitrator LeGrange, that there had been at least four adjournments of the hearing before June 25th. At the very least, two of those adjournments were at the request of the union, three of whose officials were under indictment at the time in the United States District Court for the Eastern District of New York. There is evidence from which this court infers that at least two, if not three, of the four adjournments were sought by the union because of this pending criminal case. This being so, I cannot accept the arbitrator's possible view that it was the plaintiff rather than the union which was the cause of most, if not all, of the adjournments. Furthermore, I note that it was as recent as June 12th when the union had added more issues to be tried out before the arbitrator. For this additional reason, I think he should have been required to exercise his discretion in favor of the company. Not only was Mrs.

Sanderson noticeably ill in the presence of the arbitrator, but he even went to the added step of calling Beekman Downtown Hospital to ascertain whether in fact she had gone to that institution, which she clearly had done.

■ One other point, albeit not raised by the parties, requires brief discussion. At page 3 of his opinion, the arbitrator based, at least in part, his refusal to grant plaintiff an adjournment upon the following sentence appearing in Article 9 heretofore quoted:

"If either party falls or refuses or neglects to appear, then the arbitrator shall hear the evidence of the party appearing and render his decision as if both parties had appeared."

Whatever the meaning of this sentence, it cannot be sensibly construed to permit an arbitrator to ignore sound discretion in passing upon a request by a party for an adjournment. Once a request for an adjournment was improperly denied, moreover, it should make no difference to the applicability of Section 10(c) of the Act that a party or its representative walked out of the hearing. Surely, in other words, the quoted sentence cannot be read to emasculate the intent of Congress as expressed in that Section. I doubt that Mr. LeGrange thought otherwise. In all probability, he alluded to the quoted sentence in order to initially support what he thought was an appropriate exercise of discretion. For reasons heretofore discussed, I disagree and conclude that he abused his discretion when he refused plaintiff an adjournment on June 25, 1973.[4] Pursuant to Section 10(c) of the Act, this is sufficient to require this court to vacate the award of October 17, 1973.

*The Issue of the Award of Damages*

According to plaintiff, this court should conclude that the arbitrator's award of $100,000 in damages was

4. It should be noted that the "misconduct" referred to in 9 U.S.C. § 10(c) does not have to rise to the level of bad faith. *Newark Stereotypers Union v. Newark Morning Ledger Co.*, 397 F.2d 594 (3d Cir.), cert. denied, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

biased and corrupt. See 9 U.S.C. § 10(a). Plainly, Article 9 of the collective bargaining agreement conferred upon arbitrator LeGrange the power to award money damages to one of the parties. Aware of this, plaintiff's contention is that the award was not based upon sufficient evidence and the arbitrator's opinion establishes that this is so.

Granting that at least in theory the large amount of the award and its evidentiary underpinnings present troublesome questions, it is unnecessary to treat these issues here in light of this court's holding that the award must be set aside because of the arbitrator's refusal to grant an adjournment to plaintiff. Furthermore, as was pointed out by Judge Oakes in *Stavborg, supra*, at p. 429 et seq., the courts have been consistently reluctant to disturb an arbitrator's award "on the merits."

### Conclusion

Upon the foregoing findings of fact and conclusions of law, plaintiff is entitled to an order vacating the award and providing that the issues in question be referred back to an arbitrator for hearing *de novo*. Settle order accordingly on notice.