**CONCOURSE BEAUTY SCHOOL, INC., Plaintiff,**

v.

**Michael P. POLAKOV and Design and Construct of South Florida, Inc., Defendants.**

**No. 87 Civ. 1712 (RJW).**

United States District Court, S.D. New York.

May 9, 1988.

Rogovin & Golub, New York City (Benjamin J. Golub, of counsel), for plaintiff.

Leiby and Elder, Miami, Fla. (David R. Elder, of counsel) Blau, Kramer, Wactlar & Lieberman, P.C., Jericho, N.Y. (Edward S. Wactlar, of counsel), for defendants.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff Concourse Beauty School, Inc. ("Concourse") has moved pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, (the "Act") to vacate an arbitration award entered on December 28, 1987. For the reasons that follow, plaintiff's motion is denied.

## BACKGROUND

Concourse, a New York corporation originally commenced a federal action for fraud, breach of contract, and negligence against Design and Construct of South Florida, Inc. ("Design") and its principal, Michael Polakov. The suit was brought in the Southern District of New York predicating federal jurisdiction on diversity of citizenship.

Pursuant to an arbitration agreement contained in the parties' contract, defendants initiated an arbitration proceeding in Florida. Concourse subsequently moved this Court to stay the arbitration until the resolution of the federal lawsuit. On September 21, 1987, the Court denied plaintiff's motion, finding that the dispute fell within the contract's broad arbitration clause. On December 22, 1987, the arbitration panel awarded $119,630.52 to Design.

Plaintiff now moves to vacate the arbitration award pursuant to section 10 of the Federal Arbitration Act. Concourse asserts four grounds in support of its motion: (1) The arbitrators exceeded their authority by considering an oral agreement for additional work ("extras") not governed by the arbitration clause; (2) The arbitrators' refusal to grant a short postponement was improper; (3) The arbitrators exceeded their authority by awarding more damages than requested; and (4) The arbitrators exhibited evident partiality and bias in favor of defendants.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

Before the Court can address the merits of the within motion, it must determine if it has subject matter jurisdiction over the motion to vacate and whether venue is proper in the Southern District of New York. Defendants claim that a Florida state court is the proper forum for review and confirmation of the arbitration award.[1] Plaintiff, on the other hand, contends that this Court has jurisdiction to review the arbitration award and that venue properly lies in the Southern District of New York.

Article 13 of the parties' American Institute of Architecture ("AIA") contract provides that judgment may be entered upon the arbitration award in accordance with applicable law in any court having jurisdiction thereof. The Court has satisfied the requirements for jurisdiction over this action under the Act in that there is both diversity of citizenship and a contract evidencing a transaction involving commerce. Moreover, even without such explicit contractual authority giving this Court the right to enter judgment, this Court would still have jurisdiction to evaluate the award. The Second Circuit has held that a court which orders arbitration

---

1. In fact, subsequent to Concourse's filing of the instant motion to vacate, Design on January 20, 1988 filed a motion to confirm the arbitration award in the Circuit Court of the 11th Judicial Circuit in and for Dade County, Florida. That motion is still under advisement by the state court.

retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate. *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d Cir. 1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986) (citing *Marchant v. Mead–Morrison Mfg. Co.*, 29 F.2d 40, 43 (2d Cir.1928), *cert. denied*, 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565 (1929)). A refusal to stay arbitration is essentially the equivalent of an order to compel arbitration. *Id.* Thus, this Court's September 21, 1987 Order refusing to stay the Florida arbitration gives this Court jurisdiction over the within motion to vacate.

With respect to proper venue, sections 9 and 10 of the Act, respectively provide that an application to confirm or vacate an arbitration award may be made to the United States Court in and for the district wherein such award was made. 9 U.S.C. §§ 9, 10. Although the Act clearly imparts subject matter jurisdiction to the federal courts to confirm or vacate an arbitration award, there is a split of authority within the Circuits as to whether proper venue rests exclusively in the district court where the arbitration award was made or whether any district court with subject matter jurisdiction can confirm or vacate the award.

Since the award in this case was made in Dade County, Florida, this Court must determine whether proper venue for the motion to vacate is in the Southern District of Florida or the Southern District of New York.

Although the Second Circuit has not yet specifically ruled on whether a district court outside the district where an arbitration award was made has jurisdiction over a suit to vacate the award pursuant to section 10 of the Act, the Second Circuit has held that a district court outside the district where an arbitration award was made has jurisdiction over a suit to confirm the award pursuant to section 9 of the Act. *Smiga v. Dean Witter Reynolds, Inc., supra*, 766 F.2d at 706.

In *Smiga*, the Second Circuit held that "[o]nce a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was grant-

ed." *Id. See also Motion Picture Laboratory v. McGregor & Werner*, 804 F.2d 16, 19 (2d Cir.1986) (section 9 should be read as permissive rather than exclusive); *NII Metals Services, Inc. v. ICM Steel Corp.*, 514 F.Supp. 164, 166 (N.D.Ill.1981) (consistent with principles of judicial economy, venue provision of section 9 did not preclude confirmation of an award in a district other than where the award was rendered); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573, 574 (D.Neb.1978) (venue provisions of section 9 should be read as permissive rather than exclusive).

On the other hand, a number of courts have held that the venue clauses in both sections 9 and 10 of the Act are mandatory, vesting exclusive jurisdiction in the district court where the arbitration award was granted. *See e.g., Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 744 (9th Cir. 1985) (section 10 limits jurisdiction to vacate an award to the district where the award was made); *Island Creek Coal Sales Co. v. City of Gainesville, Florida*, 729 F.2d 1046, 1050 (6th Cir.1984), *cert. denied*, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985) (section 9 provides for exclusive jurisdiction in district court where award was made); *City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182, 183 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974) (suit to vacate must be brought in the district court for the district in which the award was made); *United States ex rel. Chicago Bridge & Iron Co. v. ETS–Hokin Corp.*, 397 F.2d 935, 939 (9th Cir.1968) (section 10 limits jurisdiction to vacate an award to the district where the award was made); *Enserch Int. Exploration v. Attock Oil Co.*, 656 F.Supp. 1162, 1165 (N.D.Texas 1987) (Congress intended section 10 to render exclusive jurisdiction in one federal court); *Arthur Imerman Undergarment Corp. v. Local 162*, 145 F.Supp. 14, 17 (D.N.J.1956) (venue provisions of section 9 are mandatory so award must be confirmed in district where it was made).

■ This Court holds that had the Second Circuit been confronted with a section 10 case it would likewise have found that the venue provision is permissive rather than exclusive. This conclusion is supported by the fact that the Second Circuit has recently referred to a motion to vacate as an "essentially identical action" as a motion to confirm. *Motion Picture Laboratory v. McGregor & Werner, supra,* 804 F.2d at 19. *See also Enserch Int. Exploration v. Attock Oil Co., supra,* 656 F.Supp. at 1164 n. 5 (sections 9 and 10 of the Act have similar jurisdiction and venue provisions and are referred to interchangeably).

Having found the venue provision in section 10 to be permissive, this Court must now determine whether in its discretion it should entertain the motion to vacate. In *Motion Picture Laboratory v. McGregor & Werner, supra,* 804 F.2d at 19, the Second Circuit held that a judge in the Southern District of New York should not have entertained a motion to confirm an award made in Florida even though venue was not improper in New York. The circumstances giving rise to that decision, however, are not present in this case.

Unlike *Smiga* and the instant case, the parties in *Motion Picture* had "absolutely no ties to the Southern District of New York." *Id.* In addition, the defendant in *Motion Picture* had previously filed a motion to vacate the arbitration award in the Middle District of Florida at the time the plaintiff filed the motion to confirm in New York. *Id.* Although the Second Circuit cited to the *Smiga* permissive venue rule, the Court based its decision on the "well-settled" first filed rule. *Id.* "[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Id.* (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986)).

■ While in the *Motion Picture* case, the Florida action was filed first and the suit in the Southern District of New York was tainted with signs of forum shopping, *id.,* in the instant case, plaintiff's motion to vacate was filed in the Southern District of New York before the motion to confirm was filed in Florida state court. In addition, plaintiff has strong ties to New York in that it is a New York Corporation with its principal place of business in the Southern District of New York. Finally, this Court is very familiar with the facts of the pending litigation, having already entertained a motion to stay the arbitration on the ground that a case involving the same parties and the same issues was filed in this Court prior to the commencement of arbitration.

"It would of course appear wasteful for this Court, already having jurisdiction of the parties, to be required to dismiss the action," compelling Concourse to sue in a Florida district court to vacate the award. *NII Metals Services, Inc. v. ICM Steel Corp., supra,* 514 F.Supp. at 166. Accordingly, in the interests of judicial economy, this Court will retain jurisdiction over the instant suit.

II. *Motion to Vacate the Arbitration Award*

"Courts may vacate an arbitration award only upon a showing of one of the statutory grounds listed in the Arbitration Act, 9 U.S.C. § 10, if the arbitrators acted in manifest disregard of the law, *see Wilko v. Swan,* 346 U.S. 427, 436–437, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953); . . . or if the award is incomplete, ambiguous, or contradictory, *Bell Aerospace Co. Div. of Textron v. Local 516,* 500 F.2d 921, 923 (2d Cir.1974) (footnote omitted)." *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346, 1350–1351 (S.D.N.Y.1987), *aff'd without opinion,* 841 F.2d 1117 (1988). The grounds to vacate an award are strictly limited in order to avoid frustrating the basic purpose of arbitration, disposing of disputes quickly and avoiding the expense and delay of litigation. *Id.* at 1351. Concourse, as the party moving to vacate, bears the burden of proof. *See Andros Compania Maritima v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978); *Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74

**1316**

L.Ed.2d 79 (1982). The Court will address in turn plaintiff's contentions that the arbitrators exceeded their authority by considering an oral agreement for additional work not governed by the arbitration clause, that the arbitrators' refusal to grant a short postponement was improper, that the arbitrators exceeded their authority by awarding more damages than requested, and that the arbitrators exhibited evident partiality and bias in favor of defendants.

### A. Contract for Extras

Concourse contends that the arbitrators exceeded their authority by considering the parties' oral agreement for extras as part of the arbitration award. Concourse objects to the arbitrators awarding Design $12,500 for extras which were solely the product of an oral agreement. Concourse argues that since arbitration is provided for in the written agreement and the additional work was based on an oral understanding, the consideration of extras was outside the purview of the arbitration clause. In addition, Concourse contends that even if the arbitrators could consider the issue of extras, they should not have found for defendants because the AIA agreement clearly states that all extras must be in writing.

"The scope of an arbitration clause, like any contract provision is a question of the intent of the parties." *S.A. Mineracao Da Trindade–Samitri v. Utah Intern. Inc.,* 745 F.2d. 190, 193 (2d Cir.1984). *See also Necchi S.P.A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 696 (2d Cir. 1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). Article 13.2 of the AIA agreement adopted by the parties provides in relevant part, "all claims and disputes between the Contractor and the Owner *arising out of, or relating to,* the Contract Documents or the breach thereof shall be decided by arbitration...." (emphasis added). It is a well settled federal principal that arbitration clauses are to be construed as broadly as possible. *S.A. Mineracao Da Trindade–Samitri v. Utah Intern., supra,* 745 F.2d at 194.

"[D]oubts as to arbitrability should be 'resolved in favor of coverage,' ... language excluding certain disputes from arbitration must be 'clear and unambig-

uous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*Wire Service Guild v. United Press International,* 623 F.2d 257, 260 (2d Cir.1980) (quoting *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.,* 406 F.2d 1046, 1048 (2d Cir.1969)). *See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (any ambiguity surrounding the arbitration clause's language should be resolved in favor of arbitrability).

In the Court's view, whether the parties could orally modify their contract notwithstanding the clause providing only for written modification is a dispute between the Contractor and the Owner arising out of or relating to the Contract and is therefore arbitrable. Despite Concourse's contention that the contract for extras was entirely separate and lacked an arbitration clause, *see Eugene W. Kelsey v. Architectural Openings,* 484 So.2d 610, 611 (Fla. Dist.Ct.App.), *review denied,* 492 So.2d 1330 (1986), the arbitrators evidently found that the oral agreement between the parties regarding extras was a modification of the written contract and properly governed by the written arbitration clause.

Having evaluated the evidence on the record, the Court concurs with the arbitrators' decision. Unlike the *Kelsey* case where the oral and written subcontracts for wardrobe units and metal doors were separate jobs covered by separate agreements, the extras at issue in the instant case were necessary to complete the original contract and clearly constituted modifications of the original agreement rather than entirely new agreements. Testimony during the arbitration revealed that some of the extras resulted from drainage changes not previously contracted for but specifically required by various plan examiners and building officials during renovation. Transcript of Arbitration held 10–6–

87 and 10–7–87 ("Tr.") at 268. In addition, field inspectors determined on-site that certain walls should have separate framing, that significant amounts of electrical work and rewiring were needed, and that sprinkler heads had to be added to the ceiling in the rear section of the building to bring the building into compliance with Building Codes. Tr. at 269–270. Other extras arose from specific requests of the employees of plaintiff during the construction. These extras ranged from the simple, such as installing outlets or phone stubs, to the complex, such as changing a storage room into a telemarketing closet and upgrading the common areas of the building. Tr. at 271. Finally, a number of extras resulted from emergent hidden structural conditions, such as cracked or corroded tie beams, that had to be repaired before the construction could continue. Tr. at 272–74. Because all the extras were modifications of the contract due to unforeseen circumstances, requirements, and requests, the arbitrators were correct in concluding that disputes with respect to these modifications related to the contract and therefore fell within the scope of the broadly worded arbitration clause. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir.1987); *S.A. Mineracao Da Trindade–Samitri v. Utah Intern., supra,* 745 F.2d at 194.

Plaintiff further argues that even if the arbitrators had the authority to determine the enforceability of the oral agreement, they were compelled to find it unenforceable by virtue of Article 3.2 of the AIA agreement. Article 3.2 states that "all 'additional work' shall be set forth in writing signed by the Owner and the Contractor with the cost for the same set forth thereon." Concourse contends that since it agreed to be responsible only for written contracts, the oral agreement should not have been recognized by the arbitration panel.

■ In essence, plaintiff is arguing that, in recognizing the oral agreement, the award violates either an express provision of the contract or general contract law. This is not a ground for vacating an award. An award may not be vacated under section 10 on the grounds that the arbitrator failed to interpret correctly the law applica-

ble to the issues in dispute or misinterpreted the underlying contract. *Amoco Overseas Oil v. Astir Navigation Co.*, 490 F.Supp. 32, 37 (S.D.N.Y.1979). While an arbitration award based on "manifest disregard" of the law will not be enforced, there must be "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Sidarma Societa Italiana Di Armanento Spa, Venice v. Holt Marine Industries, Inc.*, 515 F.Supp. 1302, 1309 (S.D.N.Y.), *aff'd without op.*, 681 F.2d 802 (2d Cir.1981). This is true even where the arbitrators' interpretation of the contract or of the law is "clearly erroneous in both logic and result." *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 429 (2d Cir.1974).

■ Moreover, even if an award could be vacated for improper interpretation of the contract or governing law, the instant case presents the Court with no basis for vacating the award. In accordance with the parties' intention to have their contract governed by Florida law, *see* AIA agreement, Article 13.1, this Court will look to Florida law to see whether the oral agreement is an enforceable contract. Florida law recognizes that the parties to a contract may modify the written agreement by a subsequent oral agreement or course of dealing with one another despite the requirement of a writing in order to modify. *Linear Corp. v. Standard Hardware Co.*, 423 So.2d 966, 968 (Fla.Dist.Ct.App.1982); *Pan American Engineering v. Poncho's Const.*, 387 So.2d 1052, 1053 (Fla.Dist.Ct.App.1980); *Barile Excavating v. Vacuum Under–Drain*, 362 So.2d 117 (Fla.Dist.Ct.App.1978); *Fletcher v. Laguna Vista Corp.*, 275 So.2d 579 (Fla.Dist.Ct.App.1973), *cert. denied*, 281 So.2d 213 (Fla.1973). Thus, the arbitrators could have enforced the oral agreement if they found that the parties by their course of conduct had modified their prior contract. "Manifest disregard of the law" cannot be found when an arbitrator's decision can be legally justified. *See Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986) (manifest disregard occurs when the arbitrator appreciates the exist-

ence of a clearly governing legal principle but decides to ignore it).

Since there is a sufficient basis both in fact and in law for the arbitrators' findings that the oral agreement falls within the arbitration clause and is enforceable, it is not for this Court to second-guess the arbitrators' decision. Accordingly, the Court declines to vacate the award on this ground.

**B. Failure to Postpone Final Session**

Under § 10(c) of the Arbitration Act a district court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown...." 9 U.S.C. § 10(c). "The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award." *Transit Cas. Co. v. Trenwick Reinsurance Co., Ltd., supra,* 659 F.Supp. at 1354 (*citing Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1285 (S.D.N.Y.1979)). Concourse contends that the arbitrators' refusal to postpone the final arbitration session resulted forced the absence of their principal witness and Chief Operating Officer, Robert Porges, resulting in prejudice to their case.

In support of its claim, plaintiff cites two older cases from this district, *Allendale Nursing Home, Inc. v. Local 1115 Joint Board,* 377 F.Supp. 1208 (S.D.N.Y.1974) and *Tube & Steel Corp. of Amer. v. Chicago Carbon Steel Prod.,* 319 F.Supp. 1302 (S.D.N.Y.1970). These cases, however, involve extraordinary circumstances and are therefore distinguishable from the instant case.

In *Tube & Steel Corp. of Amer. v. Chicago Carbon Steel Prod., supra,* 319 F.Supp. at 1304, the Court properly vacated an arbitration award because the arbitration panel unreasonably refused to postpone the hearings after respondent notified the panel that it was impossible for him to appear on the dates set. Respondent, a Chicago resident, had advised the panel prior to the selection of an arbitration date, that he would be unable to present for the arbitration in New York before August 17. *Id.* at 1303. Nevertheless, in spite of the

fact all three arbitrators were available during the week of the 17th, a notice of hearing was issued for August 10. Respondent's request for a postponement was denied resulting in his not being represented at the arbitration hearing. Consequently, the Court found that respondent's rights were unfairly prejudiced and vacated the award. *Id.* at 1304.

In *Allendale Nursing Home, Inc. v. Local 1115 Joint Board, supra,* 377 F.Supp. at 1212, a crucial representative of plaintiff became seriously ill during the hearing and was rushed to the hospital. Refusing to continue without the presence of the ill representative, all of plaintiff's other representatives and witnesses left the hearing. *Id.* Nevertheless, the arbitrator continued the hearing without plaintiff being represented by anyone. *Id.* Considering also that the defendants had been granted several adjournments and had recently introduced additional issues to the case, the Court properly vacated the arbitration award. *Id.* at 1214.

"[A]rbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement. Therefore, assuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds." *Fairchild & Co., Inc., v. Richmond, F. & P.R. Co.,* 516 F.Supp. 1305, 1313–1314 (D.C. D.C.1981). Whether the arbitrators acted properly in refusing to postpone the arbitration depends on the facts of each case. *Allendale Nursing Home, Inc. v. Local 1115 Joint Board, supra,* 377 F.Supp. at 1213.

In the instant case, arbitration commenced on October 6, 1987 and continued on October 7, 1987. By the end of the second session, it was evident that a third session would be needed to complete the arbitration. Thereafter, the parties attempted to reschedule and plaintiff's counsel selected December 8, 1987 as the date for the final session. When plaintiff's counsel notified Porges of the date he had chosen, Porges stated he was not available

because he had to attend an accreditation audit. On November 10, 1987, plaintiff's counsel informed the arbitrators by letter of Porge's unavailability on December 8, 1987 and requested, in light of the holiday season, that arbitration be held between December 28, 1987 and December 31, 1987. In a letter surprisingly dated November 1, 1987, the arbitrators informed plaintiff's counsel that they had reviewed plaintiff's request and decided to deny it. They informed plaintiff's counsel that any intended witnesses who could not appear due to the audit should be deposed.

■ In the Court's view, the circumstances of the instant case do not rise to the level of misconduct necessary to vacate the award. Nothing in the Act requires the arbitrators under all circumstances to adjust their schedules to suit the requests of any party. The facts of this case are clearly distinguishable from *Allendale Nursing Home* and *Tube & Steel Corp.* The absent witness, Robert Porges, attended and gave testimony at the first two arbitration sessions, both as an adverse witness and as a witness for respondent Concourse. The transcript of the arbitration clearly indicates that Mr. Porges had the opportunity to fully present his story and had completed his testimony. In fact, plaintiff's counsel represented on the record that only expert witnesses remained for the final day of arbitration. Finally, plaintiff's interests were adequately represented by its two attorneys who were both present during all three arbitration sessions. Under the circumstances, which had already included a lengthy delay, it was reasonable for the arbitrators not to grant the requested postponement. In the Court's view, Porge's absence at the final arbitration session cannot be found to have deprived Concourse of fundamental fairness. This is particularly the case because during the final session the arbitrators allowed plaintiff's counsel to admit into evidence an affidavit by Porges with respect to the profitability of the company and lost opportunity as a result of the construction problems. Tr. of 12/8/87 Arbitration at 221. In fact, an overall review of the record as a whole has convinced the Court that the arbitration proceedings were conducted in an eminently fair manner. Accordingly, the Court concludes that under the circumstances the arbitrators' denial of the request to adjourn the last arbitration session did not rise to the level of misconduct contemplated by 9 U.S.C. § 10.

## C. Excessiveness of Award

Next, plaintiff argues that the award should be set aside because it exceeded the amount Design demanded in its counterclaim. Plaintiff asserts that Design was seeking $85,000 pursuant to the parties' written agreement and $50,000 in alleged "extras". Plaintiff calculates that the arbitrators in effect awarded design $94,125.50 on the written agreement and an additional $12,500 for "extras". Concourse claims that because the award on the written contract was higher than what was demanded, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d).

Plaintiff's position is not supported by the facts in the record. Contrary to plaintiff's contentions, the record does not reflect that Design counterclaimed for $85,000 on the contract and $50,000 for extras. Rather, the counterclaim submitted by Design on March 5, 1987 in response to Concourse's petition was for a lump sum amount of $135,000. No indication was given by Design with respect to what portion of this amount related to the contract and what portion of this was for extras.

Similarly, a review of the transcript of the arbitration hearing indicates that the arbitration panel did not grant more than Design requested. There were five requisitions for payment, two of which had not been paid. Requisition number four was for $80,300 incorporating a $50,000 bill for present payment and $30,300 due for retainage. Requisition number five was for $50,000 due for "additional contract work, plus additional 'extra work' completed to date." The arbitrators received testimony from defendant Polakov that only a portion of Requisition number five was for extras while the remainder was due under the

original contract. Specifically, Polakov testified that approximately $37,500 of this requisition was for extras "plus or minus a few thousand," while the remainder was attributable to the contract. Tr. at 348–349. Therefore, assuming the witness's range of $2000 either way for the extras, the arbitration panel was presented with evidence that Design was owed anywhere from $90,800 ($80,300 + $10,500) to $94,800 ($80,300 + $14,500) on the contract and between $35,500 to $39,500 in extras. Certainly, the panel had before it evidence to conclude that Design was entitled to $94,125.50 on the written agreement and $12,500 for extras.

■ Although the arbitrators did not disclose the specific calculations for the award, it is settled law in this circuit that they are not required to do so. *See Koch Oil, S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985); *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214–1216 (2d Cir.1972). In the absence of any indication that an award was made in manifest disregard of the law, courts will not look beyond a lump sum award in an attempt to analyze the reasoning processes of the arbitrators. *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir. 1978). If, as in this case, a ground for the arbitrators' decision can be inferred from the facts of the case, the award should not be vacated. *Id.*

■ The arbitrators in the instant case were presented with a counterclaim requesting $135,000 and they awarded $106,625.50 plus interest. Because the amount of this award is amply supported by evidence in the record, the Court will defer to the arbitrators with respect to its appropriateness.[2]

### D. Bias of the Panel

Finally, plaintiff contends that the award should be vacated because the arbitrators exhibited "evident partiality" in favor of defendant. Plaintiff points to certain pages in the transcript in support of this contention. The Court, having read the entire record and having paid special attention to the cited pages, finds no indication of "evident partiality" or bias on the part of the arbitrators.

The Federal Arbitration Act authorizes a district court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(b). The Second Circuit has restricted a court's power to vacate an award on this ground by ruling that the mere "appearance of bias" is insufficient to satisfy the statutory standard of evident partiality. *Pitta v. Hotel Ass'n of New York City, Inc.,* 806 F.2d 419, 423 (2d Cir.1986); *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 173–174 (2d Cir.1984); *Morelite Constr. Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.2d 79, 83 (2d Cir.1984). "Evident partiality" within the meaning of 9 U.S.C. § 10 is present in an arbitration proceeding where a reasonable person would have to conclude that an arbitrator was partial. *Id.* at 84.

■ Reading the voluminous record in its entirety and paying special attention to the cited portions of the transcript, the Court concludes that a reasonable person could not find partiality on the part of the arbitrators. Rather, the record indicates that the arbitrators were exceedingly fair, permitting each party a full opportunity to state his position on the record. Plaintiff's

---

2. Even if plaintiff was correct and the arbitration panel had awarded more on the contract than was requested, the Court would still not vacate the award. There has been no showing by the plaintiff, nor can the Court find any precedent, requiring per se vacation of an award when it exceeds the amount demanded. That is not to say that an award should be sustained where the damages granted have no relation to the harm suffered. *See e.g., Totem Marine Tug & Barge v. North Am. Towing,* 607 F.2d 649 (5th Cir.1979) (award vacated where arbitrators awarded an unrequested item of

damages three times larger than any item claimed); *Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45 (6th Cir.1979), (award vacated where no evidentiary support for it in the record). Inasmuch as the award here is supported by evidence in the record and there is no per se rule barring an arbitrator from awarding more than demanded, the arbitrators cannot be said to have acted in manifest disregard of the law even if they had awarded Design $9,125.50 in excess of the request for damages pursuant to the written contract.

purely speculative contentions concerning bias do not warrant vacating the arbitration award.

## CONCLUSION

This Court has both the jurisdiction and proper venue to entertain the plaintiff's motion to vacate. The arbitrators properly found the oral agreement concerning extras was related to the written agreement and it was within their discretion to find at least part of the oral agreement binding. Concourse was not deprived of fundamental fairness when the arbitration panel refused to postpone the last arbitration session. The arbitrators did not exceed their authority in awarding damages to Design. Finally, the record is devoid of any evident partiality that would warrant vacating the award on the basis of bias. Accordingly, Concourse's motion to vacate the award is denied.

It is so ordered.