[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-4801

_____

D. C. Docket No. 95-8580-CV-DLG

DEAN WITTER REYNOLDS, INC.,

Plaintiff-Appellant,

versus

WAYNE FLEURY,  BETTY FLEURY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 13, 1998)**

Before COX and HULL, Circuit Judges, and FAY, Senior Circuit Judge.

COX, Circuit Judge:

Dean Witter Reynolds, Inc. appeals the district court's grant of Wayne and Betty Fleury's motion to compel arbitration under the Federal Arbitration Act (9 U.S.C. § 1) of their claims against Dean Witter. We vacate the district court's order and remand with instructions to dismiss Dean Witter's complaint and compel arbitration before the NASD.

## I. BACKGROUND

Wayne and Betty Fleury opened a securities account at Dean Witter in 1982. Upon opening the accounts, the Fleurys signed a "Customer Agreement" containing this arbitration clause:

> Any controversy between you [Dean Witter] and the undersigned [the Fleurys] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect.

(R.1-15, Exhibit G at ¶ 16). The Fleurys also signed an "Account Agreement" containing nearly identical language.

The Fleurys purchased three limited partnerships in their Dean Witter account between 1982 and 1985. Unfortunately, the Fleurys became dissatisfied with these investments, and in December 1994 commenced an arbitration proceeding against Dean Witter before the National Association of Securities Dealers (NASD). The

Fleurys alleged that Dean Witter was guilty of wrongdoing in connection with the purchase of the partnerships and in the ongoing management of the Fleurys' account. The NASD was not one of the arbitration fora specified either in the Customer Agreement or in the Account Agreement, but Dean Witter did not contest the choice of forum. Instead, Dean Witter and the Fleurys signed a "Uniform Submission Agreement" pursuant to the NASD Code of Arbitration Procedure (the "NASD Code") submitting the Fleurys' claims to arbitration before the NASD. The Submission Agreement provided in pertinent part:

> The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

(R.1-15, Exhibit A at ¶ 1). In April 1995 Dean Witter filed an answer to the Fleurys' claims with the NASD, alleging, among other things, that the claims were barred by § 15 of the NASD Code, which requires that a claimant file a claim within six years of the occurrence giving rise to the claim.[1] On July 15, 1995, the NASD Director of

---

[1]The NASD Code was renumbered in 1996, and Section 15 was renumbered Section 10304. For purposes of consistency, we will refer to the section at issue as Section 15. It states:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Rule shall not extend applicable statutes of limitations, nor shall it apply to any case which is

2

Arbitration ruled that the six-year period immediately preceding the filing of the claim had begun on January 31, 1989. The Director therefore ruled that the Fleurys' claims regarding the purchase of the limited partnerships were time-barred, as the Fleurys purchased the limited partnerships before the 1989 cutoff date. However, the Fleurys had also alleged wrongdoing occurring after January 31, 1989; the Director ruled that their claims as to those allegations could proceed to arbitration.

In August 1995, a month after the Director's ruling, a panel of this court decided *Merrill Lynch, Pierce, Fenner & Smith v. Cohen*, 62 F.3d 381 (11th Cir. 1995). In *Cohen*, a broker-dealer confronted with an arbitration claim by a client sought to enjoin the arbitration on the ground that the client's claims were barred by § 15 of the NASD Code. The district court decided in favor of the client, and entered an order compelling arbitration. We reversed, ruling that the question of § 15 eligibility was in that case for the court, not the arbitrator, to decide.

Approximately six weeks after *Cohen* was issued, Dean Witter filed an action in the Southern District of Florida. Dean Witter contended that all of the Fleurys' claims were ineligible for arbitration under § 15, and that under *Cohen* the arbitrator

directed to arbitration by a court of competent jurisdiction.

NATIONAL ASSOC. OF SEC. DEALERS, CODE OF ARBITRATION PROCEDURE § 10304 (visited April 2, 1998) <http://www.nasdr.com/2820.htm>. The court regrets the need for the Internet citation; although the NASD Code plays a central role in this case, surprisingly none of the parties submitted the pertinent sections to be included in the record before us.

should not have made the § 15 eligibility determination. Dean Witter requested that the district court conduct an eligibility hearing under *Cohen*, issue a declaratory judgment on the § 15 issues, and permanently enjoin the Fleurys from arbitrating their claims before the NASD if the court found the claims ineligible under § 15. The Fleurys responded by filing a motion for summary judgment. They characterized Dean Witter's § 15 argument as a refusal to recognize the NASD's jurisdiction over their claims, and contended that this refusal gave them the right to withdraw their claims from the NASD and submit them to the American Arbitration Association (AAA) under the original Customer Agreement. Not coincidentally, the AAA does not have a provision comparable to § 15 setting time limits for eligibility.

The district court concluded that Dean Witter in effect contested the NASD's jurisdiction over the matter. As the Fleurys were willing to submit their claims to the AAA, the court reasoned neither party would be prejudiced by compelling arbitration before the AAA. The court therefore concluded that an order compelling arbitration before the AAA would be an "appropriate" solution to the controversy. It dismissed as moot the summary judgment motions of both parties and granted the Fleurys' motion in the alternative to compel arbitration before the AAA. Dean Witter appeals the district court's ruling.

## II. DISCUSSION

Dean Witter argues that the Submission Agreement acted as a modification to the original Customer and Account Agreements, extinguishing the Fleurys' right to seek arbitration before the AAA. The Submission Agreement, Dean Witter contends, is a binding arbitration agreement between the parties, and the § 15 challenge in the district court does not give the Fleurys the right to back out of the agreement. Dean Witter also argues that under *Cohen* the district court, not the arbitrator, decides § 15 eligibility, and that the district court therefore erred in declining to determine the eligibility of the Fleurys' claims and in ordering the matter to arbitration before the AAA.

The Fleurys counter, arguing that Dean Witter abandoned the Submission Agreement by seeking injunctive relief in the district court. Thus, the Fleurys contend, the Submission Agreement should be rescinded and the parties returned to the *status quo ante*, *i.e.*, the original Customer Agreement. The Fleurys also distinguish *Cohen*, noting that in *Cohen* the brokerage firm applied for an injunction immediately after the claim was submitted to arbitration, whereas in this case Dean Witter signed a submission agreement and even asked the arbitrator to adjudicate its § 15 defense before turning to the courts.

A. *Was the Submission Agreement Abandoned?*

The district court concluded that "[t]he parties clearly agreed in their Account Agreements to submit all claims to arbitration before the AAA." (R.1-21 at 5-6). While this is true, it ignores the fact that the parties later signed a valid and binding Submission Agreement. In the Submission Agreement, the parties agreed to submit their claims to the NASD, thereby modifying the earlier Account and Customer agreements. *See Piggly Wiggly Operators' Whse., Inc. v. Piggly Wiggly Operators' Whse. Indep. Truck Drivers' Union Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) ("Arbitration is a matter of contract, . . . but the initial contract to arbitrate may be modified by the submission agreement or grievance." (citations omitted)). Under the Federal Arbitration Act, the Submission Agreement, being an "agreement in writing to submit to arbitration an existing controversy," is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

The Fleurys argue that Dean Witter abandoned the Submission Agreement. The question of what constitutes abandonment of an arbitration agreement is a question of fact. *See Burton-Dixie Corp. v. Timothy McCarthy Const., Inc.*, 436 F.2d 405, 407-08 (5th Cir. 1971). The district court made no explicit finding as to whether the contract was abandoned, stating only that "[Dean Witter] does not recognize the NASD's

6

jurisdiction over the matter." (R.1-21 at 6). To the extent that this statement may be said to embody a finding of fact that the Submission Agreement was abandoned, it is clearly erroneous. "The abandonment of a contract may be effected by the acts of one of the parties thereto where [1] the acts of that party are inconsistent with the existence of the contract and [2] are acquiesced in by the other party." *McMullen v. McMullen*, 185 So. 2d 191, 193 (Fla. Dist. Ct. App. 1966). Evidence of neither of these elements is present in the record before us. First, Dean Witter's action in the district court is not inconsistent with the existence of the Submission Agreement. Dean Witter's complaint only contests the NASD's jurisdiction over the § 15 issues, not the entire dispute. Dean Witter's suit thus asks the district court to conduct a hearing on the § 15 eligibility of the Fleurys' claims and enter a judgment pursuant to its findings following that hearing. Had the district court conducted a hearing and found the Fleurys' claims eligible under § 15, it would not have gone on to adjudicate the merits; presumably the parties would have proceeded to arbitrate the merits of the Fleurys' claims before the NASD. Second, even if Dean Witter's action for injunctive relief were somehow so fundamentally inconsistent with the Submission Agreement as to constitute abandonment of it, we can find no actions by the Fleurys that could be construed as acquiescence. Indeed, the Fleurys opposed Dean Witter's action in

7

the district court. The Submission Agreement is valid, and the district court erred in ordering the claims to be arbitrated before the AAA.

B.  *Did the District Court Err in Failing to Hold a § 15 Eligibility Hearing?*

Dean Witter directs our attention to *Cohen*, which it argues compels the conclusion that the district court should have held a hearing on the § 15 eligibility of the Fleurys' claims. In *Cohen*, we held that § 15 of the NASD Code is not a procedural statute of limitations, but a substantive eligibility requirement, determining the arbitrability of a given claim. Under the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*,[2] courts, not arbitrators, should decide questions of arbitrability unless there is "clear and unmistakable evidence" that the parties intended to submit such questions to an arbitrator. We could find no such evidence in *Cohen*, and remanded the case to the district court with instructions that it conduct a hearing on the § 15 eligibility of the claims in that case.

Dean Witter argues that the record does not contain sufficient evidence of intent to submit the § 15 issues to the NASD, and that the arbitrator's ruling on the § 15 issues represents "[u]nilateral and unsolicited action by the NASD." Appellant's Reply Brief at 4. This is a disingenuous reading of the record, which is replete with evidence that Dean Witter intended the NASD to resolve the § 15 issues. When the

---

[2]514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995).

Fleurys filed their grievance with the NASD, Dean Witter's immediate reaction was to file a responsive pleading with the NASD. In that pleading Dean Witter not only argued the § 15 issues to some extent but also indicated that it would submit further argument on that point as soon as the Fleurys would provide more specific factual allegations regarding their claims. (R.1-15, Exhibit B at 2-3).[3] In a letter dated April 24, 1995, the NASD directed the Fleurys to respond to "the Section 15 issue raised by Dean Witter," indicating that the responses "will be forwarded to the Director of Arbitration for decision." (R.1-15, Exhibit D). Dean Witter received a copy of this letter, yet did not object to the NASD's jurisdiction to decide the § 15 issues. Instead, seemingly dissatisfied with the vague factual allegations underlying the Fleurys' claims, Dean Witter contacted the Fleurys' counsel and negotiated an agreement by which the Fleurys would amend their Statement of Claim to include greater factual detail and Dean Witter would raise its § 15 issues before the arbitrator at a later date. Indeed, Dean Witter notified the NASD of this arrangement in a letter dated May 19, 1995. (R.1-15, Exhibit F at 2). However, the NASD's Director of Arbitration evidently felt that she had sufficient information before her, and ruled on the § 15 issues, notifying the parties in a memo dated July 7, 1995. (R.1-15, Exhibit E). Dean

_____

[3]By comparison, in *Cohen* the brokerage firm's first reaction upon receiving a grievance was to immediately request an injunction from the district court. *Cohen*, 62 F.3d at 382. Dean Witter did not file its action in district court until September 1995, nine months after the Fleurys filed their grievance with the NASD.

Witter points out that in a subsequent letter it complained to the Director that her § 15 ruling was "premature." (R.1-15, Exhibit F at 1). This could be taken as a protest to the NASD's jurisdiction, were it not for the very next sentence of the letter, in which Dean Witter informed the Director that "[Dean Witter] *fully wish[es] to argue the Section 15 issue* once an Amended Statement of Claim has been filed by the [Fleurys] as agreed." (R.1-15, Exhibit F at 1) (emphasis added). Dean Witter's conduct throughout the arbitration provides "clear and unmistakable evidence" that it intended to submit the § 15 issues to the NASD, any belated protests to the contrary notwithstanding.[4] Under *Cohen* the NASD therefore had jurisdiction to resolve the § 15 issues, and Dean Witter's suit must be dismissed.

---

[4]*Cf. Piggly Wiggly*, 611 F.2d at 584 ("In this case, neither party questioned the arbitrability either of the dispute stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator with reservation. It was only after he had decided the . . . issue adversely to the employer that it sought to raise the question of his jurisdiction. . . . Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.")

### III. CONCLUSION

For the reasons stated above, we VACATE the district court's order compelling arbitration before the AAA, and REMAND this case with instructions that the district court dismiss Dean Witter's complaint and issue an order compelling arbitration before the NASD.

VACATED AND REMANDED WITH INSTRUCTIONS.