Linda HARRIS, in her capacity as Personal Representative of the Estate of Lessie M. Delk, deceased, Plaintiff,

v.

A.G. EDWARDS & SONS, INC. and Kelly S. Waller, Defendants.

No. ED 91293.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 18, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 13, 2009.

Jeffrey J. Kalinowski, St. Louis, for Plaintiff.

Steve Koslovsky, St. Louis, for Defendants.

CLIFFORD H. AHRENS, Judge.

A.G. Edwards & Sons, Inc. and Kelly Waller (collectively "Brokers") appeal from the order and judgment of the trial court denying their motion to dismiss the lawsuit (or in the alternative to stay the action and compel arbitration) of Linda Harris, daughter of the late Lessie M. Delk ("Deceased"), filed in her capacity as personal representative of Deceased's estate. We reverse and remand with instructions.

Deceased received a settlement of approximately $2,500,000 to compensate her for injuries sustained in a fire. The proceeds from this settlement were invested with Brokers in 1997. Deceased died in 2002. On February 11, 2004, Harris filed a lawsuit in the Circuit Court of St. Clair County, Illinois, which asserted a breach of fiduciary duty and negligence by Brokers in their management of Deceased's account. On December 8, 2005, the Illinois trial court entered an order ("December 2005 Order") staying the litigation pending arbitration. The order stated "Because the parties have agreed to resolve their dispute via N.A.S.D. arbitration, this matter shall be stayed (pending the arbitration[ ] )[.]" [1]

On or about April 5, 2007, Harris initiated arbitration with Brokers before the N.A.S.D., Dispute Resolution, Inc. [2] The Statement of Claim filed by Harris noted that she had initially filed an action in the Illinois trial court and that the matter had been referred to arbitration by the December 2005 Order. The claims asserted by Harris are essentially those previously asserted in the Illinois lawsuit. On April 19, 2007, Harris executed a N.A.S.D. Regulation Arbitration Uniform Submission

---

1. "N.A.S.D." is the acronym for "National Association of Securities Dealers."

2. The arbitration action was still pending at the time of the judgment in the trial court.

Agreement ("USA") in her capacity as executor of the estate of Deceased, which was filed with the N.A.S.D. several days later. During the pendency of the arbitration, Harris voluntarily dismissed the Illinois lawsuit without prejudice on June 26, 2007. Several months later, on September 18, 2007, Harris filed the present action against Brokers in the Circuit Court of the City of St. Louis. Harris asserted claims of a breach of fiduciary duty and of negligence on the part of Brokers in their handling of the investments of Deceased. Brokers filed a motion to dismiss the present action, seeking to compel arbitration, or in the alternative, to dismiss the petition in deference to the Illinois litigation. The trial court treated the motion to dismiss as a motion to stay ("motion to dismiss/stay"). Harris did not file a memorandum in opposition to the motion to dismiss/stay. The matter was argued before the trial court, but apparently not on the record. After the oral argument on the motion to dismiss/stay, Harris, via her counsel, submitted several documents, which included records from the Illinois litigation, as well as an A.G. Edwards customer account agreement signed by Harris and Waller. The A.G. Edwards customer account agreement was not that of Deceased, but rather for Harris's own account.

The trial court entered an order on March 12, 2008, denying Brokers' motion to dismiss. The trial court found that the customer account agreement provided to Harris by Defendants as proof that there was an arbitration agreement that compelled arbitration regarding Deceased's account with A.G. Edwards was not for Deceased's account, but rather that of Harris herself. It further found that Defendants were unable to demonstrate that there was an enforceable arbitration agreement in its account agreement with Deceased. The trial court also found that Harris signed

the USA "under the mistaken belief that there was a valid arbitration agreement in force at the time." It found that there was no mutuality of assent "where it is clear that [Harris] would not have signed the [USA] had she known that there was no contract mandating arbitration, and she could not have known that the [USA] would then become an agreement to arbitrate in the absence of such a contract." It concluded that Brokers had not shown that Harris agreed to submit her claim on behalf of Deceased's estate to arbitration. The order was subsequently denominated a judgment and denied by the trial court on June 9, 2008. Brokers now appeal pursuant to section 435.440.1(1) RSMo 2000.

■■■ "When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). We apply Missouri contract law to determine if the parties entered into a valid agreement to arbitrate disputes. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006). "The public policy favoring arbitration is so strong that once an agreement to arbitrate is proven, the arbitration clause will be construed in favor of arbitration unless the clause positively cannot be interpreted to cover the asserted dispute." *State ex rel. MCS Building Co. v. KKM Medical*, 896 S.W.2d 51, 53 (Mo.App.1995). A written agreement to submit a present or future controversy to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist in equity or at law for the revocation of any contract. *Village of Cairo v. Bodine Contracting Co.*, 685 S.W.2d 253, 258 (Mo.App.1985). The arbitrability of a dispute is a question of law

that this Court reviews *de novo*. *Nitro Distributing*, 194 S.W.3d at 345.

Because the second point relied on is dispositive, we need not address Brokers' first point relied on. In their second point relied on, Brokers contend that the trial court erred in denying their motion to dismiss/stay because the USA is an enforceable arbitration agreement in that there is no evidence in the record that shows that Harris made a mistake of fact when executing the USA. Brokers further argue that Harris's alleged unilateral mistake of fact is not a sufficient basis to void the USA, and that her conduct shows her assent to the USA.

■ The USA, which was executed by Harris, the party against whom the contract is sought to be enforced, was attached to Brokers' motion to dismiss/stay. It is a valid written agreement to arbitrate that was in the record before the trial court. Accordingly, it is valid, enforceable and irrevocable, unless there is a basis at law or in equity to void or revoke the contract. *Village of Cairo*, 685 S.W.2d at 258. Harris does assert two different grounds for voiding the USA: mistake of fact and lack of consideration. The trial court based its decision to deny the motion to dismiss/stay based on Harris's apparent mistake of fact that as Deceased's personal representative, she was obliged to arbitrate because Deceased's account agreement with A.G. Edwards included an agreement to arbitrate disputes. Seemingly this alleged mistake was induced by Brokers showing Harris a copy of her own IRA account agreement with A.G. Edwards, which has an arbitration clause, and which Harris thought was for Deceased's account.[3]

■ However, the record before this Court does not support the findings and conclusion of the trial court. The record is sparse. The trial court had before it some of the proceedings from the Illinois litigation, but there is nothing to show any sort of written agreement to arbitrate was submitted to the Illinois court. There is no evidence of the terms of Deceased's account agreement with A.G. Edwards. Presumably if that document had a clause compelling arbitration, it would have been filed with either the Illinois or Missouri trial courts. There is the USA, executed by Harris. However, there is no allegation in the record that Harris made a mistake of fact that Harris relied on in executing the USA, no allegation that Brokers knew or should have known of such a mistake, and no evidence that Harris actually made such a mistake of fact. Harris presented no affidavits, depositions, or other material submitted before the argument on the motion. The argument before the trial court on the motion to dismiss/stay was not made on the record, and there is nothing to show that any evidence was adduced beyond what was included with Brokers' motion to dismiss/stay. Harris apparently did not request that the hearing on Brokers' motion to dismiss/stay be on the record. It is incumbent on the party that desires to have a record made of the trial proceedings to make a timely request of the court. *Hedrick v. Director of Revenue*, 207 S.W.3d 675, 677–78 (Mo. App.2006). The only material presented

---

**3.** A unilateral mistake of fact is not normally a defense to a contract, and courts are extremely reluctant to permit one party to avoid an agreement because of a mistake not shared by the other party to the contract. *Landers v. Sgouros*, 224 S.W.3d 651, 664 (Mo.App.2007). There is a trend to permit avoidance where enforcement would be unconscionable and relief from the agreement would not impose a substantial hardship on the other party. *Id.* Relief may also be given for a unilateral mistake where the other party had reason to know of the mistake. *Id.* (quoting Restatement (Second) Contracts section 153).

by Harris to the trial court is the post-argument letter of her counsel, along with a copy of the order of dismissal without prejudice of the Illinois action, filed on June 26, 2007, and a page from Harris's own IRA account agreement with A.G. Edwards.[4] This letter from counsel does not state when Harris was provided with the written arbitration agreement, whether before or after she executed the USA, and does not claim that Harris mistakenly relied on that document when she executed the USA. "Mistake is an affirmative defense and the burden rests on the party who asserts the defense to prove it." *SAB Harmon Industries, Inc. v. All State Building Systems, Inc.*, 733 S.W.2d 476, 486 (Mo.App.1987). The evidence in the record does not prove that Harris made a mistake of fact, whether unilateral or mutual, in executing the USA.

 Harris also contends that the USA is void because it lacked consideration in that Brokers were obligated to arbitrate if Harris so wished due to their membership in the Financial Industry Regulatory Authority ("FINRA") even without the execution of the USA. The want of consideration is an affirmative defense, and the party asserting that defense has the burden to show the absence of consideration; it is not sufficient merely to plead the lack of consideration. *Burrell v. Kaiser*, 344 S.W.2d 622, 626 (Mo.App.

1961). Harris fails to do this. Brokers admit that their membership in FINRA requires them to arbitrate customer disputes when the claims arise in connection with the business of A.G. Edwards or the activities of its agent, Waller, and the customer demands to arbitrate. That is all that is required by the FINRA Code. The USA requires that the parties agree to do more than just arbitrate. Under the USA, Brokers and Harris also agreed as follows:

> ... that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s) ...
>
> ... to abide by and perform any award(s) rendered pursuant to [the USA] and further agree that a judgment, and any interest thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

A promise to carry out a pre-existing duty does not constitute consideration. *Eiman Brothers Roofing Systems, Inc. v. CNS International Ministries, Inc.*, 158 S.W.3d 920, 921 (Mo.App.2005). However, if the subsequent contract imposes new or different obligations, i.e., it is not identical to the pre-existing duties, this constitutes suffi-

---

4. The letter from Harris's counsel to the trial court stated as follows:

> At the oral argument of Defendant A.G. Edwards Motion to Dismiss this morning, it was stated that the original case filed in St. Clair County Circuit Court was still pending and that if arbitration was not ordered, the matter should proceed in that court rather than in this court. In fact, the St. Clair County action was dismissed without prejudice by order of Judge LeChien dated June 26, 2007, a copy of which is attached. Therefore the St. Clair County action is no longer pending.

> In addition, reference was made to the underlying written arbitration agreement which A.G. Edwards provided to me in response to my request. A copy of that agreement is attached hereto. You will note the highlighted language concerning the agreement to submit disputes to arbitration. While at first blush this would appear to require my client to proceed to arbitration, the agreement relates to her separate IRA investment account and not to the account of her mother, Lessie Delk, which is the subject of this action.

cient consideration. *Id.* at 922–23. The consideration here may be slight, but it is still present. Cases from other jurisdictions have held that a submission agreement, such as the USA, is an agreement to arbitrate supported by consideration. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980); *Dean Witter Reynolds, Inc. v. Fleury,* 138 F.3d 1339, 1342 (11th Cir.1998).[5] Point sustained.

The judgment of the trial court denying Broker's motion to dismiss/stay is reversed, and the cause remanded with instructions to the trial court to stay the proceedings and to order arbitration.

ROBERT G. DOWD, JR., C.J., and SHERRI B. SULLIVAN, J., concur.

---

5. Harris attempts to distinguish her situation from cases cited by Brokers for their contention that the USA is a contract or agreement to arbitrate supported by consideration. We are not persuaded by these efforts to distinguish cases.