**INTERCITY COMPANY
ESTABLISHMENT,**
Petitioner,

v.

**Charles AHTO, Dominic Mariano,
Shearson Lehman Brothers,
Inc., Respondents.**

No. 3:97CV01893(GLG).

United States District Court,
D. Connecticut.

July 10, 1998.

Elizabeth Seieroe Maurer, Ridgefield, CT, for Petitioner.

James S. Rollins, Hartford, CT, for Respondents.

## OPINION

GOETTEL, District Judge.

This action was brought by petitioner, Intercity Company Establishment, pursuant to 9 U.S.C. § 10, asking this Court to vacate an award of an arbitration panel of the National Association of Securities Dealers, Inc. *In the Matter of the Arbitration between Intercity Company Establishment v. Shearson, Lehman Brothers, Inc., Charles Ahto, and Dominic J. Mariano, Jr.*, Docket No. 92–00768, 1997 WL 632934 (N.A.S.D. Aug. 8, 1997). Respondents have filed a cross-motion asking that the award be confirmed. For the reasons set forth below, respondents' cross-motion [**Doc. # 8**] will be granted and petitioner's amended petition [**Doc. # 4**] will be denied.

## BACKGROUND

Intercity, a Liechtenstein corporation, is a blind trust that operates in the United States under the authority of its sole United States agent, Johannes von Mecklenburg, a resident of Brookfield, Connecticut. Intercity's president is Mr. R.A. Steenbergen, who resides in Europe and is unable to travel to the United States for health reasons.[1]

In 1985, Intercity signed an agreement to open a brokerage account with respondent Shearson. By 1992, a number of controversies had arisen between the parties, which had ostensibly resulted in losses of $1.8 million[2] to Intercity. In February 1992, Intercity executed a Submission Agreement in which it agreed to submit these matters to arbitration, and, on March 4, 1992, it filed its initial Statement of Claim with the National Association of Securities Dealers ("NASD") Arbitration. Intercity claimed that respondents had engaged in churning, unsuitable investments, fraud, breach of fiduciary duties, negligence, breach of contract, violation of federal securities laws and failure to supervise the firm's broker.

Respondent Charles Ahto was a financial consultant at Shearson who serviced Intercity's account. Respondent Dominic Mariano was a financial consultant with PaineWebber, Inc., who took over Intercity's account for approximately one year in mid–1987. Mariano later transferred to Shearson and serviced Intercity's account at Shearson.

In 1995, in response to Intercity's amended claim, Shearson asserted a counterclaim against Intercity, claiming that Intercity's authorized agent, von Mecklenburg, violated Connecticut law, C.G.S.A. § 52–570d, by illegally and surreptitiously tape-recording telephone conversations with Mariano.

Over the next five years, twenty hearings were held by the arbitrators, as well as eight pre-hearing conferences between counsel for the parties and the panel or chairperson. On August 8, 1997, the panel of arbitrators issued their award, denying all claims asserted by Intercity and awarding respondents $78,-986.82 in attorneys' fees.

During the course of the arbitration proceedings, Intercity was represented by six different attorneys and, at various times, by its representative von Mecklenburg, purportedly pro se. In 1995, Intercity made its first request for a change in the location of the hearings, from New York City to the Brookfield/Danbury, Connecticut area (near von Mecklenburg's home), due to disabilities suffered by von Mecklenburg. Von Mecklenburg claims to have multiple mental disabilities, including a traumatic brain injury that he suffered in an automobile accident in 1974 and a panic disorder with agoraphobia, which prevent him from traveling long distances. This request was granted in part. The panel agreed to hold the hearings in Stamford,

---

1. It is unclear from the record who the officers and directors of Intercity were during the five years of the arbitration proceedings. Several names other than Mr. Steenbergen's are mentioned in the exhibits, all of whom appear to reside in Europe. It is unknown whether anyone else besides Mr. Steenbergen was unable to travel to the United States.

2. This figure was increased to over $2.2 million in Intercity's amended claim.

Connecticut, with Intercity's bearing the additional costs to the NASD of having the hearings moved from New York City. Between February 1995 and May 1997, Intercity made numerous additional requests to have the panel reconsider its decision and to move the hearings to the Brookfield/Danbury area. The panel denied these requests and continued to hold the hearings in Stamford, some of which were attended by von Mecklenburg and some of which were not. Even when von Mecklenburg could not attend the hearings, Intercity never made any other representative available for the hearings.[3]

In the meantime, Intercity had filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), alleging that the NASD arbitration panel had violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(b)(2)(A)(ii), by virtue of its refusal to relocate the hearings to the Brookfield/Danbury area to accommodate von Mecklenburg's disabilities. Intercity then filed an ADA suit with this Court. On March 7, 1997, by Order of this Court, Intercity's ADA suit was dismissed for lack of standing. *Intercity Company Establishment v. National Association of Securities Dealers, Inc.*, No. 3:96CV245 (GLG) (D.Conn. March 7, 1997) (memorandum decision granting defendant's motion to dismiss).

In 1996, von Mecklenburg videotaped his redirect testimony for the arbitration hearings, pursuant to a purported court directive.[4]

The panel agreed to hold the next hearing, scheduled for May 6, 1997, in Brookfield, so that von Mecklenburg could attend and complete his testimony.[5] At the hearing, Intercity attempted to present von Mecklenburg's redirect testimony through the videotape, despite the fact that he was present at the hearing. Respondents objected to this testimony on the ground that their counsel was not present when the videotape was made. Respondents also objected to the documents attached to the written transcript, since these had never been produced. The panel refused to allow the videotape or the written testimony and instructed Intercity's counsel to proceed with his redirect. Intercity's counsel insisted repeatedly that he was unprepared to go forward with any witnesses, despite efforts by the panel to accommodate him. For example, the panel suggested a brief adjournment to allow him to prepare and suggested that he simply frame his questions based upon the written testimony that he desired to submit. Intercity's counsel continued to refuse to proceed.

Undoubtedly, due at least in part to the panel's frustration with Intercity's refusal to proceed despite its efforts to accommodate von Mecklenburg, the panel indicated that all future hearings would be held in Stamford, and that the parties should be prepared to go forward with the case on the next scheduled hearing date, July 28, 1997. Additionally, in light of the past postponements that had been requested by Intercity due to changes of counsel, the panel emphatically advised the parties that a change of counsel would not be a valid cause for postponement of the hearing.

Intercity's then counsel withdrew from the case, citing von Mecklenburg's inability to attend the hearings and Intercity's refusal to provide him with another representative.

In July 1997, despite the panel's warnings, Intercity again changed counsel just before the hearing date. On July 23, 1997, the new counsel wrote the arbitration panel asking

---

3. *See* Note 1, *supra.*

4. The nature of this purported "court directive" is disputed and is unclear from the record. At the time, Intercity's ADA suit was pending before the late Honorable T.F.G. Daly, U.S.D.J. (D.Conn.). No written order was ever entered requiring von Mecklenburg to videotape his testimony or requiring that the next hearing take place in Brookfield. There was, however, a conference with the Court, at which von Mecklenburg was present, as well as his neurologist. We

presume that moving the venue of the next arbitration hearing and, perhaps, even the idea for videotaping von Mecklenburg's redirect testimony was a compromise reached amongst the parties at this conference in the ADA case. We are not aware of any order, either written or oral, that was ever entered allowing von Mecklenburg to testify by videotape or setting forth the parameters for that testimony.

5. *See* Note 4, *supra.*

that the July 28th hearing be postponed due to counsel's plans to attend a family reunion and the American Bar Association convention, as well as the pending ADA charge (which was no longer pending), which could affect the location of the hearing. The panel denied her request for a postponement. At the final hearing, Intercity did not appear through von Mecklenburg or through counsel, and respondents presented their closing arguments.

On August 8, 1997, the panel issued its award, which provided in pertinent part:

1. All claims asserted by Claimant against Respondents are denied in their entirety as Claimant failed to meet its burden of proof. The Panel considered and decided all of Claimant's claims on the merits.

2. Respondents' motions to dismiss on various grounds are denied, except that the Panel never ruled on the Respondents' motion to dismiss pursuant to Rule 10402 of the *Code* [Motion to Dismiss the Claim as Ineligible for Arbitration].

3. Claimant violated Connecticut General Statutes and is liable to Respondents on their counterclaim, referred to by Respondents as Third Party Claim, based upon the actions of Mr. von Mecklenburg, Claimant's authorized representative.

4. Claimant is liable to Respondents for attorneys' fees pursuant to *Neuberger & Berman v. Donalson Lufkin and Jenrette Securities Corp. and Kidder Peabody & Co.* (No. 91–16833 (N.Y. Co. NYSupCt, April 6, 1992)). Claimant shall pay Respondents attorneys' fees in the amount of SEVENTY EIGHT THOUSAND NINE HUNDRED EIGHTY SIX DOLLARS AND EIGHTY TWO CENTS ($78,986.82) as detailed in Mr. Michaels' affidavit for attorneys' fees, Exhibit No. R–24. Claimant is also liable to Respondents pursuant to Connecticut General Statutes for attorneys' fees.

*In the Matter of the Arbitration Between Intercity Company Establishment v. Shearson Lehman Brothers, Inc., Charles Ahto, and Dominic Mariano, Jr.,* Case No. 92–00768 at 5–6 (NASD Regulation, Inc. Aug. 8, 1997).

Intercity now asserts six reasons that the arbitration award should be vacated:

1. In making the award, the arbitrators were guilty of misconduct in that they refused to hear evidence that was pertinent and material to the controversy and that supported Intercity's claim.

2. In making the award, the arbitrators exceeded or imperfectly exercised their power by ruling on a third-party claim alleging wiretapping under Connecticut law.

3. In making the award, the arbitrators arbitrarily refused to postpone the hearing set forth for July 28, 1997.

4. In making the award, the arbitrators acted in manifest disregard of the law, by failing to award Intercity damages and in violating the Americans with Disabilities Act by not conducting the hearings in Brookfield, Connecticut.

5. In making the award, the arbitrators acted to deprive Intercity of substantive and procedural due process by not giving the parties adequate notice of the May 6, 1997, hearing and by denying Intercity the opportunity to present evidence.

6. In making the award, the arbitrators awarded attorneys' fees even though such fees are not ordinarily recoverable in the absence of a statute or enforceable contract.

## DISCUSSION

### I. Intercity's Motion to Vacate the Arbitration Award

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), governs this Court's authority to vacate arbitration awards. *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir.1991). Where the parties have voluntarily agreed to submit their dispute to arbitration, this Court must afford the arbitrators great deference, *see Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32, 34 (2d Cir.1951), and judicial review of an arbitration award is narrowly limited to prevent undue judicial intervention into the arbitration process, which would inevitably defeat the objective of

providing an alternative means of dispute resolution other than lawsuits filed in federal court. *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 19 (2d Cir.1997); *Barbier,* 948 F.2d at 120. It is not the function of this Court to review the award for errors of law or fact. *Saxis S.S. Co. v. Multifacs Intern. Traders, Inc.,* 375 F.2d 577, 581–82 (2d Cir. 1967). Rather, an award may be vacated only if one of the grounds set forth in the FAA, 9 U.S.C. § 10(a), is found to exist. *Barbier,* 948 F.2d at 120 (citations omitted). The FAA evidences a strong presumption in favor of enforcing arbitration awards. *Wall Street Associates, LP v. Becker Paribas Inc.,* 27 F.3d 845, 848 (2d Cir.1994).

Section 10(a) provides in relevant part as follows:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

Within this framework, we review each of the six issues raised by Intercity.

A. *Whether the arbitrators were guilty of misconduct in refusing to hear evidence that Intercity alleges was pertinent and material to the controversy and that supported Intercity's claim*

Intercity asks this Court to vacate the arbitrators' award on the ground that the panel refused to consider the redirect "testimony" of von Mecklenburg, which he attempted to submit by tape and in written form at the May 6, 1997 hearing. *See* 9 U.S.C. § 10(a)(3). Intercity also complains that the panel refused to hear the testimony of Shearson's Morristown, New Jersey office supervisor and the cross-examination of respondents Ahto and Mariano.

Courts have interpreted section 10(a)(3) to mean that, except where fundamental fairness is violated, arbitration determinations will not be subject to evidentiary review. *Tempo Shain Corp.,* 120 F.3d at 20. An arbitration panel is not required to hear all of the evidence proffered by a party. *Id.* They must, however, give each of the parties an adequate opportunity to present their evidence and argument. *Id.*

In this case, which spanned a five-year period, the arbitration panel held 20 hearings. Von Mecklenburg presented his direct testimony and was cross-examined at an earlier hearing, at which he had commenced his redirect. He now complains that he was not given an opportunity to present his redirect testimony at the May 6th hearing nearly two years later.

Von Mecklenburg, however, was present in person at the May 6th hearing, which was held in Brookfield for his convenience. The chairperson held that, because he was present, the panel would not consider the tape nor read the transcript.[6] The testimony was

---

**6.** We use the terms "testimony" and "transcript" very loosely in this case. Intercity has provided this Court with a copy of the 80 pages of single-spaced transcription of the five tapes which von Mecklenburg recorded. The cover page indicates that the recording was made before a reporter and stenographer, although the transcript is not signed by the reporter. It does not appear

that any attorneys were present or that von Mecklenburg was placed under oath. In fact, it does not appear that anyone, even Intercity's own counsel, asked von Mecklenburg any questions. Rather, the 80 pages (which would translate to at least 240 pages of double-spaced deposition transcript, if in the proper format) are a rambling, often unintelligible, diatribe by von

not under oath, nor was opposing counsel present to cross-examine von Mecklenburg. The panel appropriately required von Mecklenburg to testify on redirect in person rather than through the videotape, which was inherently untrustworthy. As the chairperson stated, "If there is to be redirect of Mr. von Mecklenburg, we will hear Mr. von Mecklenburg in person. We have today to do that in Brookfield. If he is to be a live witness at another time, that will be in Stamford. Those are the parameters." Hr'g Tr. of May 6, 1997, at 313. Even after the panel offered to take a break and thereafter resume, Intercity's attorney indicated that they were not prepared to go forward, and would not go forward, on that basis.

We find no error in the panel's refusal to consider the videotaped statements of von Mecklenburg, which violated every rule concerning the taking and introduction of sworn deposition testimony. *See* Rules 28, 30, 32, Fed.R.Civ.P. Intercity was given an opportunity to go forward with its case at the May 6th hearing and chose not to do so. Additionally, it was Intercity's attorney who did not attend the last hearing on July 28, 1997.

 There was no violation of fundamental fairness in the panel's failure to consider this additional evidence. Absent a denial of fundamental fairness, it is not this Court's function to dictate how arbitration proceedings are to proceed or what evidence must be heard. As the court in *Sebbag v. Shearson Lehman Bros., Inc.*, No. 89 Civ. 5477(MJL), 1991 WL 12431, at *4 (S.D.N.Y. Jan.8, 1991) stated: "It is not this Court's job to review each evidentiary ruling of the arbitrator, and determine whether we agree with it. Rather, this Court must look at the proceedings as a whole, and determine whether or not petitioner was afforded a fair hearing." *See also Tempo Shain Corp.*, 120 F.3d at 20 (holding that federal courts do not "superintend arbitration proceedings;" rather, their review is restricted to determining whether the procedure was fundamentally unfair). The record demonstrates that Intercity was, indeed, afforded a fair hearing. Accordingly,

we deny Intercity's motion to vacate on this basis.

*B. Whether the arbitrators exceeded or imperfectly exercised their power by ruling on the "third-party" claim alleging illegal wiretapping*

Intercity next argues that the arbitration panel exceeded the scope of its authority by considering Shearson's "third-party" complaint filed under Connecticut state law.

 In accordance with the strong federal policy favoring arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations and internal quotations omitted); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). If the allegations underlying the claims touch upon matters covered by the parties' agreement, the Second Circuit has held that those claims must be arbitrated regardless of the labels attached to them. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir.1997) (citations omitted). Arbitration, however, is essentially a matter of contract, and the parties may not be forced into arbitration if that was not their agreement. *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir.1995).

 In the instant case, when the parties agreed to arbitrate their dispute, they signed a Submission Agreement, which provided in relevant part that the parties agreed to submit "the present matter in controversy, as set forth in the attached statement of claim, answers, and *all related counterclaims* and/or third party claims which may be asserted, to arbitration." Uniform Submission Agreement at ¶ (1) (emphasis added). The arbitration clause contains typically broad

---

Mecklenburg attacking the panel and the respondents. Our review of this "testimony" indicates

that it would have been of no evidentiary value to the panel, even if it had been admitted.

language covering all disputes "related to" the original claim. *See WorldCrisa,* 129 F.3d at 75.

Respondents' "third-party claim" was against von Mecklenburg individually and against Intercity for the acts of its agent in violating state law by surreptitiously recording at least five telephone conversations that he had with Mariano without Mariano's consent. According to the "third-party claim," Intercity had produced a cassette tape in connection with the arbitration proceedings containing five such conversations. (Shearson was unaware of the total number of such conversations that were actually recorded by von Mecklenburg). This tape and the conversations recorded thereon clearly related to the subject matter of the arbitration or Intercity would not have attempted to use these in connection with the arbitration.

As to Shearson's claim against Intercity for the acts of its agent, we find that this claim "related to" the arbitration claim initially brought by Intercity. Thus, it was covered by the Submission Agreement and was properly before the arbitration panel.[7]

■ As to respondents' "third-party" claim against von Mecklenburg, because there was nothing in the Submission Agreement indicating that von Mecklenburg individually consented to arbitration, it would have been improper for the panel to arbitrate claims against him individually. However, Shearson withdrew its claim against von Mecklenburg individually. The arbitrators never made any award against von Mecklenburg individually and, in the award, were careful to point out that respondents' "third-party complaint" was in fact a "counterclaim" against Intercity for the acts of its agent. Award at 3. Thus, we find no error in the arbitrators' considering what amounted to a counterclaim against Intercity for the acts of

its agent, which "related to" the matter of the original claim.

### C. Whether the arbitrators arbitrarily refused to postpone the July 28, 1997 hearing

Intercity next argues that the arbitrators arbitrarily refused to postpone the last hearing, which its counsel was unable to attend due to prior personal commitments. *See* 9 U.S.C. § 10(a)(3).

■ A district court may vacate an arbitration award where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown. The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding. *Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311, 1318 (S.D.N.Y. 1988). Arbitrators are to be accorded considerable discretion in exercising their judgment with respect to a requested postponement.[8] *Id.* If a reasonable basis exists for denying the postponement, a court should be reluctant to interfere with the award on these grounds. *Id.* Thus, vacatur based upon a failure by an arbitration panel to postpone a hearing date is justified only if there is no reasonable basis for refusing to grant the postponement. *See Schmidt v. Finberg,* 942 F.2d 1571, 1574 (11th Cir.1991).

■ In this case, the arbitrators had made it abundantly clear at the preceding hearing that they intended to move forward on July 28th even if there was a change in counsel. The chairperson stated emphatically:

Change of attorneys we do not consider. Absolutely not. . . .

If you change attorneys, make sure you take into calculation at the time that you are changing attorneys, that you need to

---

7. Additionally, it appears from the record before this Court that Intercity has waived its right to oppose the panel's consideration of respondents' counterclaim. *See Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.,* 449 F.2d 106, 107–08 (2d Cir.1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972) (holding that a party to an arbitration may not wait until an adverse award before raising an objection to the panel's hearing the matter). Evidence on this counter-

claim was presented at the June 12, 1995, and March 18, 1996, hearings. There is nothing in the record to indicate that Intercity objected to the panel's consideration of this cross-claim, which had been pending since March 20, 1995.

8. The scheduling of hearings is determined by the arbitrators. *See* NASD Code of Arbitration Procedure § 10315.

have time before July 28th to give that attorney sufficient time to get up to date with the case, whatever that attorney needs to do.... Attorneys, if you need to turn to your parties and make sure they understand this, do so, because they are here, and they are going to be held responsible if they decide to change attorneys.

Hr'g Tr. of May 6, 1997, at 383–84. Intercity, failing to heed this unequivocal message, changed attorneys for a sixth time and chose as its attorney someone who had a prior conflict with the next scheduled hearing date. In doing so, it acted at its own peril.[9] An arbitration panel is accorded great discretion in granting or denying postponements. *See Storey v. Searle Blatt Ltd.,* 685 F.Supp. 80, 82 (S.D.N.Y.1988). In this case, particularly given the panel's forceful warning and the history of repeated delays and requests for postponements by Intercity, we find no abuse of discretion in the panel's refusal to grant yet another postponement. Clearly there was a reasonable basis for their refusal to grant a postponement. Additionally, we note that the Submission Agreement signed by the parties stated that they agreed that "in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration of the arbitrator(s)." Submission Agreement at ¶ (3). There was nothing arbitrary about the panel's refusal to postpone the last hearing. We refuse to vacate the arbitration award on this ground.

D. *Whether the arbitrators acted in manifest disregard of the law in failing to award Intercity damages or in violation of the ADA by not conducting the hearings in Brookfield*

Intercity next challenges the arbitration award on the ground that the panel acted in manifest disregard of the law in failing to award it damages and in refusing to abide by the ADA.

The second portion of this issue need not detain us for we have already ruled in the

ADA case brought by Intercity that Intercity lacks standing to assert a violation of the ADA on behalf of von Mecklenburg. *See Intercity Company Establishment, Inc. v. National Association of Securities Dealers, Inc.,* No. 3:96CV245(GLG) (D.Conn. March 7, 1997) (memorandum decision).

▉ Intercity also argues that the award rendered was contrary to the public policy embodied in the ADA by virtue of the panel's failure to accommodate its authorized agent. First, it is not the award that Intercity is challenging; Intercity is challenging the situs of the hearings. Moreover, as discussed above, the record indicates that the panel did in fact attempt to accommodate von Mecklenburg by moving the hearings to Stamford and later to Brookfield. Despite this last accommodation, Intercity refused to proceed with the hearings. Additionally, Intercity has never explained why there was no other representative of the company who could attend on its behalf. We find no violation of public policy in this regard.

With respect to whether the arbitrators acted with manifest disregard of the law in refusing to award Intercity damages, the Second Circuit has recognized that an arbitration award may be vacated or modified only in the "severely limited" circumstances where it is in manifest disregard of the law. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1042, 140 L.Ed.2d 107 (1998); *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998). Thus, we have been afforded little discretion in overturning an arbitration award, given the strong presumption in favor of enforcing arbitrators' awards. *See Wall Street Associates,* 27 F.3d at 849.

▉ Arbitrators are not required to provide the rationale for their award, and courts generally will not look beyond the

9. The NASD Code of Arbitration Procedure § 10318 provides:

 If any of the parties, after due notice, fails to appear at a hearing or at any continuation of a hearing session, the arbitrators may, in their

discretion, proceed with the arbitration of the controversy. In such cases, all awards shall be rendered as if each party had entered an appearance in the matter submitted."

lump sum award in an attempt to analyze the reasoning processes of the arbitrators. *Id.* The Second Circuit has cautioned that manifest disregard "clearly means more than error or misunderstanding with respect to the law." *DiRussa,* 121 F.3d at 821 (citations omitted).

> The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*DiRussa,* 121 F.3d at 821 (citing *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986)). To vacate an award as in manifest disregard of the law, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether; and (2) that the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. *Id.* (quoting *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 112 (2d Cir.1993)) (internal quotations and citations omitted). As another Second Circuit court decision stated, a party challenging an award must show that no proper basis for the award may be inferred from the facts of the case. *Wall Street Associates,* 27 F.3d at 849 (citations omitted).

■ In this case, the arbitration award stated that the panel had considered all of Intercity's claims on the merits and found that Intercity had failed to meet its burden of proof. Intercity's claims related to churning, securities violations, recommending unsuitable investments, failure to disclose the risks attendant certain investments, and breach of fiduciary duty. Intercity now argues that they were entitled to damages because their broker was unregistered. That issue, however, was never raised in the original statement of claim or in the amended claim. Moreover, this issue is not even briefed in Intercity's Memorandum of Law in Support of its Amended Petition and Notice to Vacate Arbitrators' Award. Therefore, we decline to consider this issue on the merits, which is being raised for the first time in Intercity's motion to vacate. In its motion to vacate, Intercity has presented no other legal theory that the panel allegedly manifestly disregarded. We deny Intercity's motion to vacate on this basis.

*E. Whether the arbitrators deprived Intercity of substantive or procedural due process in noticing the May 6, 1997 hearing*

■ Intercity also asserts that its substantive and procedural due process rights were violated by virtue of its not receiving adequate notice of the format for the May 6, 1997 hearing—i.e., that if von Mecklenburg appeared in person, he would not be able to present his testimony on redirect through his videotape or his written testimony. Intercity does not argue that it did not agree to arbitrate, or that it did not receive notice of the May 6th hearing. It complains only that its counsel did not know exactly what was going to transpire at the hearing. Due process requires only notice and the opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Intercity received both.

■ Intercity also argues that it was denied the assistance of counsel. However, the record show that it had not one but six attorneys throughout the five years of the arbitration proceedings. The panel never deprived Intercity of the right to have counsel present. At the last hearing when Intercity's sixth attorney could not attend for personal reasons, as discussed above, that was due to Intercity's deliberate choice of counsel in manifest disregard of the chairperson's warnings that the next hearing would not be postponed. We hold that there was no deprivation of Intercity's due process rights.

*F. Whether the arbitrators erred in awarding attorney's fees to respondents*

■ The last point raised by Intercity is that the arbitrators exceeded their authority by awarding respondents attorney's fees because these were neither provided for by statute or enforceable contract. Interesting-

**264**

ly, in this case, not only did respondents request attorney's fees in their counterclaim, but Intercity, who now argues against a fee award, requested an award of fees in its statement of claim. Hearings were held on the issue of fees. The Submission Agreement specifically provided that the parties agreed to be bound by the NASD Code of Arbitration Procedure. The NASD Code provides that the arbitrators may award "damages and other relief." NASD Code of Arbitration Procedure § 10330(e). Absent a provision in the arbitration agreement foreclosing attorney's fees as a remedy, respondents were not precluded from seeking fees and there was nothing improper in their award. *See PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir.1996).

*Conclusion*

Having reviewed the entire record in this case and considered all of Intercity's arguments, we hold that Intercity has not met its burden of proving that the arbitration award violated the provisions of the Federal Arbitration Act, *see* 9 U.S.C. § 10 *et seq.,* and, therefore, we DENY Intercity's Motion to Vacate the Award [Doc. # 4].

**II. *Respondents' Cross–Motion to Confirm the Arbitration Award***

▬ Respondents have not only opposed Intercity's motion to vacate but have also asked this Court to confirm the arbitration award, pursuant to 9 U.S.C. § 9. Our authority to review the award is narrowly circumscribed to determining whether the arbitrators acted within the scope of their authority in rendering the award. *See Matter of Arbitration Between Carina International Shipping Corp., Adam Maritime Corp.,* 961 F.Supp. 559, 563 (S.D.N.Y.1997). Under section 9 of the Federal Arbitration Act, we are required to confirm an award unless a statutory basis for modification or vacatur exists. *Ottley v. Schwartzberg,* 819 F.2d 373, 375 (2d Cir.1987). As discussed above, we have found no basis for vacating the award. Accordingly, respondents' mo-

tion to confirm the award [**Doc. # 8**] is GRANTED.

**SO ORDERED.**