UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

POWELL FISHER,

*Plaintiff-Appellant,*

v.

WHEAT FIRST SECURITIES,
INCORPORATED; WILLIAM H. ROGERS,

*Defendants-Appellees.*

No. 02-1673

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Margaret B. Seymour, District Judge.
(CA-01-136-4-24)

Argued: February 26, 2003

Decided: April 8, 2003

Before LUTTIG and MICHAEL, Circuit Judges, and
Robert E. PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Reynolds Williams, WILLCOX, BUYCK &
WILLIAMS, P.A., Florence, South Carolina, for Appellant. Ricardo
Juan Nunez, Legal Division, WACHOVIA SECURITIES, INC.,
Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Jesse Powell Fisher appeals an order of the United States District Court for the District of South Carolina confirming an arbitration award granted to Fisher's former employer, Wheat First Securities, Inc. (Wheat First), by a National Association of Securities Dealers (NASD) arbitration panel. Fisher argues that the district court erred in concluding that the arbitration panel had jurisdiction over a counterclaim filed by Wheat First against him. Because we conclude that Fisher agreed to arbitrate the counterclaim at the time he submitted his own claims to arbitration, we affirm the judgment of the district court.

I.

On July 7, 1998, Fisher accepted employment with Wheat First as a senior vice president and branch manager for the firm's offices in Charleston and Myrtle Beach, South Carolina. (First Union Securities, Inc. is the successor in interest to Wheat First. For clarity's sake, the parties continue to refer to the corporate defendant as Wheat First. We do the same.) Fisher's position at Wheat First provided him with several perks, including a generous bonus schedule and profit overrides. As a condition of his employment, Fisher filed a Form U-4, Uniform Application for Securities Industry Regulation. The Form U-4, which is a contract between Fisher, the NASD, and the securities exchanges, included the following provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws, of [self-regulatory organizations] . . . .

NASD rules provide for arbitration of "any dispute, claim, or controversy arising out of . . . the employment or termination of employment of associated person(s) with any member."

On March 17, 1999, Fisher signed a promissory note to Wheat First, agreeing to repay a loan of $761,008.00. This sum represented 85 percent of the amount that remained due to Fisher under his staged bonus plan. (The loan was essentially an advance on bonus payments that Fisher would otherwise receive over the course of five years.) The parties agreed that one-fifth of the promissory note would be forgiven each year on the anniversary of Fisher's employment with Wheat First. The promissory note provided that:

> In the event of the separation of service of [Fisher] with Wheat and/or its affiliates for any reason . . . the full amount of any unpaid balance shall become due and payable immediately and any amount outstanding to the credit of or due [Fisher] by Wheat and/or its affiliates shall be used for the repayment of the unpaid balance.

The promissory note also provided that in the event of default in the payment of the note, Fisher authorized First Wheat to confess a judgment against him in the Circuit Court of the City of Richmond, Virginia. The note further provided that:

> Wheat and [Fisher] hereby expressly intend to except this Note and any dispute arising hereunder from any arbitration requirement arising with respect to the employment relationship between Wheat and [Fisher], and otherwise agree to, and do hereby, waive any right to arbitration of any dispute or matter concerning this Note.

According to Fisher, the forum selection clause of the promissory note was attractive because it avoided one of the risks associated with arbitration: NASD's bylaws provide for expulsion from NASD membership and license revocation for a member's failure to pay an arbitration award. In addition to signing the promissory note, Fisher also assigned, in writing, all of his "salary, commissions, wages, [and] bonuses" to Wheat First as security for repayment of the note.

In August of 1999 Wheat First underwent a management change, and as a result, Fisher's profit percentages decreased and he no longer received the guaranteed minimums he claims to have been promised when hired. On January 12, 2001, Fisher resigned from Wheat First, claiming that the firm had failed to pay him over $81,000 in profit bonuses, over $300,000 in profit overrides, and over $200,000 in wages due. Four days later Fisher filed a diversity action in federal court against Wheat First and William H. Rogers, Wheat First's managing director. Fisher asserted three causes of action: (1) common law breach of contract; (2) violation of the South Carolina Payment of Wages Statute, *see* S.C. Code Ann. § 41-10-10, et seq.; and (3) violation of the South Carolina Unfair Trade Practices Act, *see* S.C. Code Ann. § 39-5-10, et seq. The defendants moved to compel arbitration and to stay the federal court proceedings. The parties then consented to arbitrate the dispute. On March 23, 2001, Fisher filed a Statement of Claim before the NASD in which he presented the same three causes of action against Wheat First and Rogers. With the Statement of Claim, Fisher also submitted a signed NASD Uniform Submission Agreement. The Uniform Submission Agreement provides that the "parties hereby submit the present matter in controversy . . . and all related counterclaims . . . to arbitration." Rogers answered the Statement of Claim; Wheat First answered and asserted a counterclaim against Fisher alleging non-payment of the promissory note. At that time Fisher owed $608,808.40 in principal and $36,896.48 in interest on the note. Fisher responded to Wheat First's counterclaim by arguing that the NASD arbitration panel lacked jurisdiction over that claim. The panel rejected his argument and assumed jurisdiction over the counterclaim. On January 23, 2002, the arbitration panel issued a decision denying all of Fisher's claims and awarding Wheat First the unforgiven balance on the principal due on the promissory note, plus interest and attorney's fees. Both Fisher and Wheat First filed motions in federal court, Fisher to vacate the award and Wheat First to confirm it. Following a hearing on the motions, the district court confirmed the award. Fisher now appeals.

## II.

Fisher asserts on appeal that the district court erred in failing to vacate the NASD arbitration panel's award, at least as it relates to Wheat First's counterclaim on the promissory note. First, Fisher

argues that Wheat First's counterclaim was not "related to" his claims and thus should not have been arbitrated. Second, Fisher argues that the arbitration panel lacked jurisdiction to hear the counterclaim because the parties agreed in the promissory note that the note was excepted from any arbitration requirement arising with respect to their employment relationship. According to Fisher, when he signed the Uniform Submission Agreement he believed the waiver in the promissory note would continue to govern any dispute about the note. For the reasons that follow, we disagree with Fisher and conclude that the arbitration panel properly asserted jurisdiction over Wheat First's counterclaim on the promissory note.

An arbitration award may be vacated when "the arbitrators exceed[ ] their powers." 9 U.S.C. § 10(a)(4). We review de novo a district court's decision to confirm an arbitration award. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). Federal law strongly favors arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-25 (1983). When a party questions the scope of an arbitration clause, doubts are to be resolved in favor of coverage. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996). That said, arbitration may only be compelled when parties have agreed to it, and then only to the extent agreed. *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997).

The Uniform Submission Agreement completed and signed by Fisher is a valid and binding contract that has the force of modifying earlier agreements. *See Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998); *Piggly Wiggly Operators' Warehouse Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers' Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980); *First Montauk Sec. Corp. v. Menter*, 26 F. Supp. 2d 688, 689 (S.D.N.Y. 1998). The Uniform Submission Agreement uses broad "related to" language with respect to counterclaims brought into the arbitrator's jurisdiction by the claimant's submission of the agreement. *See Intercity Co. Establishment v. Ahto*, 13 F. Supp. 2d 253, 260-61 (D. Conn. 1998) (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d

Cir. 1997)). In this case, Wheat First's counterclaim seeking payment under the promissory note clearly relates to the claims submitted to arbitration by Fisher. Fisher's Statement of Claim lists three causes of action against Wheat First, all of which concern monies allegedly owed to him by Wheat First under the terms of his employment agreement. Under the explicit terms of the promissory note, any amounts owed to Fisher by Wheat First at the time of Fisher's separation of service are to be applied toward payment of the note. In addition, Fisher expressly assigned his wages and bonuses as security for repayment of the note. Thus, Fisher's claim for nonpayment of wages and bonuses and Wheat First's claim for nonpayment under the promissory note are inherently intertwined. One party's claim cannot be fully resolved without addressing that of the other party. Given the clear relationship between Fisher's claims and Wheat First's counterclaim, Fisher knew, or should have anticipated, at the time he filed his Uniform Submission Agreement that Wheat First would, or at least could, raise a counterclaim on the note in the arbitration proceedings. And when Fisher completed, signed, and filed the Uniform Submission Agreement, he was bound by its terms to arbitrate the promissory note dispute should Wheat First assert it as a related counterclaim.

Fisher argues nonetheless that he specifically agreed to the terms of the promissory note because it excepted disputes from arbitration and thus that it was not his intent to agree to submit that issue to arbitration when he filed the Uniform Submission Agreement. Assuming arguendo that Fisher properly raises this argument on appeal (defendants claim he does not), we find it unavailing. Courts generally look to a party's objective intent in interpreting a contract, *First Montauk*, 26 F. Supp. 2d at 689, and consider the party's subjective intent only when contractual terms are ambiguous, *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995). Fisher's arguments that he did not intend to agree to arbitrate the promissory note issue fail in the face of the plain language of the Uniform Submission Agreement. While the promissory note excepted disputes under it from arbitration, Fisher's filing of the Uniform Submission Agreement unambiguously manifested his agreement to subject disputes involving the note to arbitration because they are related to his employment claims. *Cf. Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 870 (6th Cir. 1990) (party does "not retain

the right selectively to omit from arbitration certain claims or counter-claims, however surprising").

In sum, we conclude, as did the district court, that when Fisher completed and signed the Uniform Submission Agreement, he agreed to submit all related counterclaims, which included the dispute over the promissory note, to arbitration. The Uniform Submission Agreement validly modifies the earlier agreement in the promissory note to except disputes about the note from arbitration, and the Uniform Submission Agreement is binding upon Fisher. Because we conclude that Fisher agreed to submit the counterclaim to arbitration when he filed the Uniform Submission Agreement, we need not reach Wheat First's argument that Fisher also agreed to arbitrate the promissory note dispute when he filed the NASD U-4 Form at the time he accepted employment with Wheat First.

### III.

For all of the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*